EXHIBIT - 5

# EXHIBIT 5

### PACKAGE 5 – (IRS Whistleblower Submission)

**Recipient:** Internal Revenue Service – Whistleblower Office
**Date Sent:** June 23, 2025
**Service:** USPS Certified / Priority Mail
**USPS Tracking No.** 9589 0710 5270 1899 5144 08

**CLAIM ASSERTED**

IRS Whistleblower submission alleging concealed securitization income by Rocket Mortgage, with estimated taxable proceeds of $2,655,554.21 and an estimated federal tax liability of $557,666.38, supported by prior administrative defaults and penalties.

- Rocket Mortgage LLC and named executives **unlawfully securitized and monetized** a mortgage promissory note (2020) **without disclosure** to the original source of creditor, and the IRS.
- Rocket Mortgage **failed to issue required IRS forms** reflecting gain, abandonment, or discharge: Filed Forms **1099-A, 1099-OID, 1099-B**.
- Income derived from securitization/servicing **was concealed or underreported** to the IRS.
- The submission requests IRS enforcement for **unreported income, failure to file informational returns, and failure to pay tax**.

**Documents Included:**
1. IRS Whistleblower Claim Package (this document you are reading)
2. CFOL Transcript Instruction Request
3. IRS Form 211 (Completed and Signed)
4. Executed Promissory Notes 2020 - The 2017 Rocket Mortgage
5. Affidavit and Declaration of Trust Authority
6. Affidavit of Understanding and Demand
7. Form 2848 with Durable Power of Attorney
8. Private Statement & Security Agreement
9. Table of contents for Private Administrative Packages 1—4
10. Private Administrative Packages 1-4 (with affidavits and mailing proofs)

## Page 1 of 85

EXHIBIT - 5



# Package 5

# Form 211 - Whistleblower Office - ICE

EXHIBIT - 5



## IRS WHISTLEBLOWER CLAIM PACKAGE

**Affidavit of Status, Standing, and Instruction of Authority
Regarding IRS Form 211 Filing and Administrative Package**

**To:**
Internal Revenue Service
Whistleblower Office – ICE
1973 N Rulon White Blvd.
M/S 4110
Ogden, UT 84404

**Re:** IRS Form 211 Filing and Claim for Tax Recovery **From:** :Jehorek: Jason-Gerald, sui juris
**Date:** 06-2-2025

### I. Affidavit of Status and Standing

I, :Jehorek: Jason-Gerald, sui juris, in my proper capacity as the living man and original source of credit for the financial instruments identified herein, do hereby state under penalty of perjury [28 U.S.C. § 1746] that:

- I am the Grantor, Settlor, Authorized Representative, and Creditor Beneficiary of the private estate identified in this submission.

- I act as the Principal Creditor in relation to the Promissory Notes issued in 2017 and 2020 to Quicken Loans and Rocket Mortgage LLC, respectively.

- I have not waived any rights and reserve all rights nunc pro tunc ab initio. My actions are strictly within the private, and no contract of adhesion is implied.

This affidavit supports the attached IRS Form 211 as a lawful and complete whistleblower claim, with all supporting documentation provided as exhibits.

EXHIBIT - 5



## IRS WHISTLEBLOWER CLAIM PACKAGE

### II. Instruction to IRS: CFOL Transcript and Reporting Examination

I respectfully request that the Internal Revenue Service retrieve and examine Corporate Files On-Line (CFOL) transcripts for Rocket Mortgage LLC (EIN: ███████670) for tax years 2017 through 2025. This includes:

- All Forms 1099-A, 1099-OID, 1099-B
- Corresponding 1120 Corporate Income Tax Returns
- Third-party reported income regarding the securitization or sale of notes

These records are critical to confirm whether Rocket Mortgage LLC reported income derived from the conversion and monetization of the promissory notes originally signed by the source of credit, :Jehorek: Jason-Gerald, and whether such income was lawfully declared.

Based on my private administrative record and unrebutted affidavits, Rocket Mortgage failed to issue any required IRS forms, concealed monetized proceeds, and withheld material facts from the IRS.

---

### III. Estimated Taxable Proceeds Summary

Based on promissory note values, securitization servicing premiums, monthly payments, penalties, and administrative default damages, the estimated taxable earnings total **$2,655,554.21.**

Federal Corporate Tax Rate (21%) yields a liability of:
**$2,655,554.21 × 0.21 = $557,666.38**

Penalties, statutory violations, and fraudulent concealment claims from Packages 1 through 4 total:
**$2,039,089.00**

**Total Estimated IRS Action Liability: $2,655,554.21**

---

Case 5:25-cv-00558-D-BM   Document 11-7   Filed 01/27/26   Page 4 of 85

EXHIBIT - 5



# IRS WHISTLEBLOWER CLAIM PACKAGE

## IV. Criminal Statutory Reference

Based on evidence and administrative records:

- Mail Fraud [18 U.S.C. § 1341]
- Wire Fraud [18 U.S.C. § 1343]
- Bank Fraud [18 U.S.C. § 1344]
- Penalties include up to 20 years if affecting a financial institution

The original administrative penalty matrix exceeds $31,403,265.25 under Package 1.

---

## V. Table of Contents (Attachments Enclosed)

1. IRS Whistleblower Claim Package (this document you are reading)
2. CFOL Transcript Instruction Request
3. IRS Form 211 (Completed and Signed)
4. Executed Promissory Notes 2020 – The 2017 Rocket Mortgage has.
5. Affidavit and Declaration of Trust Authority
6. Affidavit of Understanding and Demand
7. Form 2848 with Durable Power of Attorney
8. Private Statement & Security Agreement
9. Table of contents for Private Administrative Packages 1–4
10. Private Administrative Packages 1–4 (with affidavits and mailing proofs)

---

**Signature Block:**

by: *Jehorek Jason-Gerald*

:Jehorek: Jason-Gerald, sui juris

Primary Trustee / Authorized Representative / Grantor / Creditor Beneficiary

For: █JASON GERALD FAMILY OF JEHOREK ESTATE – EIN ████3672

All Rights Reserved. Without Prejudice [UCC 1-308]

Without Recourse to me.

*Note: The estate seal/logo includes the "Dunbar" family lineage name for cultural and genealogical recognition. The official IRS estate name remains "JASON GERALD FAMILY OF JEHOREK ESTATE" as reflected in IRS EIN filings.*

Case 5:25-cv-00558-D-BM    Document 11-7    Filed 01/27/26    Page 5 of 85

Page 5 of 85

Page 5 of 85

EXHIBIT - 5

## Form **211** (March 2024)

**Department of the Treasury - Internal Revenue Service**

# Application for Award for Original Information

**OMB Number 1545-0409**

Do not send the same claim information multiple times or through multiple channels (e.g., electronic, mail, fax) as this may cause claim processing delays. Fields on this form have been designed to expand and may cause a narrative or other field to appear when a box is checked.

Check the box to print a blank copy of the form and manually complete ☐

## Section A – Information About the Person or Business You Are Reporting

| | | | |
|---|---|---|---|
| 1. Are you submitting information related to an existing claim | | ☐ Yes | ☒ No |
| 2. Did you submit this information to the IRS, other Federal or State Agencies, or government personnel | | ☐ Yes | ☒ No |
| 3. Check the box if you are including attachment(s) with this claim submission | | | ☒ |

4. Name of taxpayer (person or business; include aliases) who committed the violation
Rocket Mortgage LLC, Varan Krishna, Chief Executive Officer, Jay Bray, President & CEO, Bill Emerson, President, Jeff Morganroth, Chief Legal Officer, Brian Brown, Chief Financial Officer, Eric Ferguson, Vice President, Ashley Smith, Capture Manager, Moe Bazzi, Servicing Escalation Specialist

5. Taxpayer Identification Number *(e.g., SSN, ITIN, or EIN)*
84-4946470

6. Taxpayer's date of birth or approximate age
N/A – Corporate entity, Individuals listed above are estimated to be 40–60 years of age

7. Taxpayer's address *(including ZIP code)*
Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226

8. Check the box to add additional taxpayers to the list ☒

Provide the taxpayer information *(use the "+" button to add additional taxpayers to the list)*

| Name of Taxpayer | Taxpayer Identification Number | Taxpayer Date of Birth or Approximate Age | Taxpayer Address |
|---|---|---|---|
| Varan Krishna, Chief Executive Officer | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |
| Bill Emerson, President | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |
| Jeff Morganroth, Chief Legal Officer | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |
| Brian Brown, Chief Financial Officer | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |
| Eric Ferguson, Vice President | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |
| Ashley Smith, Capture Manager | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |
| Moe Bazzi, Servicing Escalation Specialist | | 40 to 60 | Rocket Mortgage LLC, 1050 Woodward Avenue, Detroit, Michigan 48226 |

*[handwritten annotation: "? Not sure if they are real people?"]*

9. What is your relationship (current and former) to the alleged noncompliant taxpayer(s) *(check all that apply) (attach sheet(s) if needed)*
☐ Current employee   ☐ Former employee   ☐ Attorney   ☐ CPA
☐ Relative/Family member   ☐ Other   ☒ None

## Section B – Information About the Alleged Violation

10. Alleged violation *(check all that apply) (information about IRS compliance work areas is available at irs.gov/whistleblower)*

☒ Unreported/Under Reported Income   ☒ Overstated/False Deductions
☒ Income Characterization   ☐ Cryptocurrency/Digital Assets
☐ International/Foreign Transaction   ☒ Failure to Withhold Tax
☒ Undisclosed Foreign Bank and Financial Accounts   ☒ Failure to File Tax/Informational Return
☐ Specific Allegations of Tax Fraud   ☒ Failure to Pay Tax
☐ Employee vs. Subcontractor   ☐ Tax Exempt/ Governmental Entity Tax Issue
☒ Money Laundering and Bank Secrecy Act   ☐ Promoter of Tax Avoidance Schemes

Catalog Number 16571S   www.irs.gov   Form **211** (Rev. 3-2024)

EXHIBIT - 5

☒ Tax Shelter/Abusive Transaction    ☒ Terrorism

☒ Other *(identify)* Failure to report and disclose securitized mortgage proceeds; unauthorized monetization of negotiable instruments; non-disclosure of CUSIP/pool data; conversion of note into trust asset without beneficiary notice or tax compliance; fraudulent credit reporting and concealment of tax-liable events.

11. Describe the alleged violation and provide all pertinent facts. Attach a detailed explanation, include all records and supporting information in your possession, and describe the availability and location of any additional supporting information not in your possession

Rocket Mortgage LLC and its executive officers engaged in unlawful securitization and monetization of a mortgage promissory note executed in 2020 without disclosure to the original creditor or the IRS. The mortgage note was sold or pledged to Fannie Mae or a related MBS trust vehicle, generating substantial proceeds. No IRS 1099-A, 1099-OID, or 1099-B was ever issued to reflect the gain, abandonment, or discharge of the note, nor was the original source of credit (Jason Jehorek) acknowledged or compensated. This constitutes concealment of reportable taxable events and possible money laundering under the Bank Secrecy Act.

Despite multiple lawful administrative demands (see Exhibits: Packages 1, 2, 3, and 4) sent to Rocket Mortgage, no CUSIP number, pool number verification, or assignment date was fully disclosed. Rocket Mortgage continues to send invoices as if the debt remains active while simultaneously concealing its profits and failing to disclose trust conversion activity. The note itself was satisfied on or before origination through securitization, per TILA and IRS regulations requiring transparency.

Supporting documentation in my possession includes:

Private administrative demands and notices (sent via USPS with green card receipts)

Certified copies of the original note and loan application

Copies of IRS 1099-series forms, and trust documents

UCC-1 Financing Statement and related private bond instruments

Affidavits of Non-Response, Default, and Dishonor

Cover letters and executive correspondence documenting administrative silence

Email threats of continued billing and credit reporting despite resolution

Location of additional supporting records not in my possession:

Rocket Mortgage securitization file and investor prospectus

Fannie Mae pool number records and trust registry

Internal accounting entries, REMIC filings, and 1099 issuance logs held by Rocket Mortgage, Quicken Loans, and/or its MBS servicer

IRS internal record logs (CFOL transcripts) for submitted 1099s and reported income from the note

Original endorsement trail, warehouse line credit entries, and REMIC custodial instructions

These actions appear to involve multiple IRS-reportable violations and bad faith concealment of taxable income events. This Whistleblower claim is submitted to request a full IRS review, audit, and enforcement under 26 U.S.C. § 7623.

12. Is the information in this claim based on public information    ☐ Yes  ☒ No

Describe how you learned about and/or obtained the information (including any documents) that supports this claim *(Attach sheet(s) if needed)*
I obtained the information through direct firsthand involvement and lawful administrative correspondence with Rocket Mortgage LLC, including:

The mortgage and title documents: 2017 and 2020, which includes the original Promissory Note for 2020, Deed of Trust, and Mortgage Application.

Four Private Administrative Packages: I sent four formal administrative packages to Rocket Mortgage LLC between May and June 2025. These packages included affidavits, invoices, demand for disclosure of securitization (CUSIP, Pool Number, reconveyance), and lawful notices of default and dishonor. Exhibits A through D contain certified copies of these notices.

Rocket Mortgage's limited and non-substantive responses: Their only known reply, dated May 14, 2025, included a copy of the original loan application and promissory note, but failed to rebut any affidavit or provide disclosure of securitization or evidence of lawful lien or enforcement authority.

Case 5:25-cv-00558-D-BM    Document 11-7    Filed 01/27/26    Page 7 of 85

EXHIBIT - 5

Planned Submission of Private Credit Instruments: A Private Promissory Note, Indemnity Bond, and related UCC filings have been prepared and are scheduled for immediate presentment to the IRS and U.S. Treasury in June 2025. This Whistleblower submission seeks to ensure they are properly logged, acknowledged, and not unlawfully withheld or suppressed.

Independent audit of securitization: Based on Pool Number details provided by Rocket Mortgage, I performed a review through fanniemae.com/tools/pooltalk and confirmed that my mortgage note was pooled and converted into investment securities. This constitutes full satisfaction of the debt and triggers reconveyance, which Rocket Mortgage has failed to perform or acknowledge.

13. Describe the amount of tax owed by the taxpayer(s). Provide all records and a summary of the information you have that supports your claim as to the amount owed *(i.e., books, ledgers, records, receipts, tax returns, etc) (Attach sheet(s) if needed)*

The estimated tax owed by Rocket Mortgage LLC is based on their unlawful conversion, monetization, and failure to report proceeds generated from two promissory notes issued in 2017 and 2020, monthly mortgage payments, securitization proceeds, and administrative penalties resulting from bad faith, dishonor, and unresolved administrative notices. These activities triggered taxable events under [26 U.S.C. § 61] and [26 U.S.C. § 6045].

The taxpayer failed to file the required 1099-A, 1099-OID, or 1099-B forms and concealed these proceeds from the IRS. Further, no discharge of debt was acknowledged despite satisfaction through monetization and securitization.

The table below provides a year-by-year breakdown of the estimated taxable proceeds:

| Year | Description | Penalties and Damages | Monthly Payment | Original Promissory Note | Servicing Release Premium | Servicing Fee Annual | Total Monthly Payments | Total Earnings |
|---|---|---|---|---|---|---|---|---|
| 2017 | Monetized Original Quicken Loans Promissory Note Policy # 3462812222 | $0.00 | $0.00 | $236,800.00 | $0.00 | $0.00 | $0.00 | $236,800.00 |
| 2017 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,226.42 | $0.00 | $3,526.00 | $440.75 | $14,717.04 | $18,683.79 |
| 2018 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,226.42 | $0.00 | $0.00 | $440.75 | $14,717.04 | $15,157.79 |
| 2019 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,226.42 | $0.00 | $0.00 | $440.75 | $14,717.04 | $15,157.79 |
| 2020 | Monetized Rocket Mortgage Promissory Note Policy # 3390893042 | $0.00 | $0.00 | $232,200.00 | $0.00 | $0.00 | $0.00 | $232,200.00 |
| 2020 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,252.47 | $0.00 | $4,736.00 | $592.00 | $15,029.64 | $20,357.64 |
| 2021 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,252.47 | $0.00 | $0.00 | $592.00 | $15,029.64 | $15,621.64 |
| 2022 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,252.47 | $0.00 | $0.00 | $592.00 | $15,029.64 | $15,621.64 |
| 2023 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,252.47 | $0.00 | $0.00 | $592.00 | $15,029.64 | $15,621.64 |
| 2024 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,252.47 | $0.00 | $0.00 | $592.00 | $15,029.64 | $15,621.64 |
| 2025 | approx. Mortgage payments (Jan-Dec @ $1,359.26) | $0.00 | $1,252.47 | $0.00 | $0.00 | $592.00 | $15,029.64 | $15,621.64 |
| 2025 | Damages from Affidavit of Non-Response and Default Package 1, 2 & 3 | $1,930,488.96 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,930,488.96 |
| 2025 | Penalties from Package 4 ($17,500 x 6 individuals) | $105,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $105,000.00 |
| | Total Estimated Taxable Proceeds | $2,035,488.96 | $11,194.08 | $469,000.00 | $8,262.00 | $4,874.25 | $134,328.96 | $2,651,954.17 |

Estimated Federal Corporate Tax Liability at 21%:

$2,651,954.17 × 0.21 = $556,910.38

This does not include potential interest and IRS-calculated penalties for non-compliance and concealment. The taxpayer's concealment of securitization gains, servicing premiums, and administrative defaults constitutes a substantial failure to report income, meriting IRS enforcement.

Supporting Documentation Provided:
1. Do not have copies for Promissory Notes for 2017 (Policy #████████22)
2. Copy provided for Original Promissory Notes 2020 (Policy #███████042)
3. CFOL Transcript Instruction Request
4. Executed Promissory Notes 2020 – The 2017 Rocket Mortgage has
5. UCC-1 Financing Statement and Security Agreement
6. Affidavit and Declaration of Trust Authority
7. Affidavit of Understanding and Demand
8. Form 2848 with Durable Power of Attorney
9. Private Statement & Security Agreement
10. Table of Contents with page-referenced exhibits for Package 1, 2, 3, 4

14. Fill in tax year (TY) and dollar amount ($), if known

Check the box to indicate if the alleged violation(s) is ongoing ☑

| Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) |
|---|---|---|---|---|---|---|---|---|---|
| 2017 | $255,483.79 | 2018 | $15,800.28 | 2019 | $15,800.28 | 2020 | $252,557.64 | 2021 | $15,800.28 |
| 2022 | $15,621.64 | 2023 | $15,621.64 | 2024 | $15,621.64 | 2025 | $2,051,110.60 | | |

EXHIBIT - 5

| Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) | Tax Year (TY) | Dollar Amount ($) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |

## Section C – Information About Yourself

**15. Check the box to indicate if multiple claimants are filing this claim jointly** ☐

Provide the claimant's information *(use the button to add additional claimants to the list)*

**Claimant 1.**

**16. Name of individual claimant**
Jehorek Jason-Gerald

| 17. Claimant's date of birth *(MMDDYYYY)*<br>12/09/1968 | 18. Claimant's SSN or ITIN<br>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 & Estate EIN 39-6893672 |
|---|---|

**19. Address of claimant *(including ZIP code)***
c/o 11937 Fairlie PL Raleigh NC [27613]

Check the box if you agree to have correspondence mailed to the address on record with the IRS ☒

| 20. Telephone number *(including area code)*<br>919-278-8828 | 21. Email address<br>jason.jehorek@protonmail.com |
|---|---|

22. Check the box if Form 2848, Power of Attorney and Declaration of Representative, is attached to this claim submission ☒

| 23. Are you the spouse or a dependent of an IRS employee | ☐ Yes | ☒ No |
|---|---|---|
| 24. Are you currently, or formerly, an employee of the Department of Treasury or any of its agencies | ☐ Yes | ☒ No |
| 25. Are you currently, or formerly, an employee of the Federal Government | ☐ Yes | ☒ No |
| 26. Are there any Federal laws or regulations that require you to disclose this information | ☐ Yes | ☒ No |
| 27. Are there any Federal laws or regulations that prohibit you from disclosing this information | ☐ Yes | ☒ No |
| 28. Are you currently, or formerly, a Federal Government contractor | ☐ Yes | ☒ No |
| 29. Are you filing this form based on information obtained from an ineligible person | ☐ Yes | ☒ No |

30. I declare under penalty of perjury that I have examined this application, my accompanying statement, and supporting documentation and aver (affirm) that such application is true, correct, and complete, to the best of my knowledge

Signature of Claimant *(required)*

by: Jehorek Jason-Gerald
Athorized Representative / Grantor / Settlor / Creditor
for JASON GERALD FAMILY OF JEHOREK ESTATE - EIN ███████672

Date
6-20-2025

This submission is made in good faith, with firsthand knowledge, under full liability and penalty of perjury under [28 U.S.C 1746]. I reserve all rights, waive none, and act strictly in my private capacity as Authorized Representative and Creditor Beneficiary. This filing is not to be constructed as granting jurisdiction or entering any adhesion contract.

All Rights Reserved Without Prejudice [UCC 1-308], Without Recourse.

EXHIBIT - 5

# Instructions for Form 211, Application for Award for Original Information

**Read the instructions before completing this form. Do not send the same claim information multiple times or through multiple channels (e.g., electronic, mail, fax) as this may cause claim processing delays.**

## General Instructions

The Whistleblower Office has responsibility for the administration of the whistleblower award program under section 7623 of the Internal Revenue Code. Section 7623 authorizes the payment of awards from the proceeds of amounts the Government collects as a result of the information provided by the whistleblower. A claimant must file a formal claim for award by completing and sending Form 211, *Application for Award for Original Information*, to be considered for the Whistleblower Program.

Send completed form along with any supporting information to:

Internal Revenue Service
Whistleblower Office - ICE
1973 N. Rulon White Blvd. M/S 4110
Ogden, UT 84404

You can find information about the Whistleblower Program at IRS.gov/whistleblower or scan the QR code

Publication 5251, *Whistleblower Claim Process*, provides an overview of the whistleblower claim process and is available at https://www.irs.gov/pub/irs-pdf/p5251.pdf or scan the QR code





## Specific Instructions

**Print or type the information in the spaces provided per the instructions.**

**Question 1.** If you have not previously submitted a Form 211 regarding the same or similar non-compliant activities, or the taxpayer(s) identified in this information have no known relationship to the taxpayer(s) identified in a previously submitted Form 211, check the box for "No."

If you are providing additional information regarding the same or similar non-compliant activities, and are identifying additional non-complaint activities by the same taxpayer(s), check the box for "Yes." If you are identifying additional taxpayers involved in the same or similar non-compliance identified on a previously submitted Form 211, and those additional taxpayers are related to the taxpayer(s) identified on a previously submitted Form 211, check the box for "Yes." If you check the box for "Yes", list previously assigned claim number(s).

**Question 2.** If you reported the violation to the IRS, other Federal or State Agencies, or government personnel; provide the agency, employee's name, title and the date the violation was reported. If known, provide contact information. Attach copies of the information you submitted if it is still available.

**Question 3.** Check the box if you are including any attachments to this Form 211 submission.

**Questions 4 – 8.** Information about the Taxpayer – Provide the taxpayer's name, address, taxpayer identification number (if known), and the taxpayer's date of birth or approximate age (if applicable). Check the box to add additional taxpayers to the list and provide the additional taxpayer's name, address, taxpayer identification number, date of birth or approximate age.

**Question 9.** This question asks about the relationship, if any, you have or had with the taxpayer. If you are a current or former employee of the taxpayer, describe your position and include all dates of employment and titles held (including all job responsibilities under each title held, the respective date(s) these titles were held, and your direct supervisor for each position held). If you are a current or former attorney or CPA, complete the sub-questions to further describe your relationship with the taxpayer. If there are potential privilege concerns associated with the information you submit, but you do not think the information should be considered privileged or you believe privilege has been waived, provide an explanation and any relevant facts when you submit the information. Federally authorized tax practitioners should consider confidentiality privilege rules relating to taxpayer communications as described under IRC Section 7525. The Whistleblower Office website at IRS.gov/whistleblower contains information on submitting information with potential evidentiary, ethical, legal, or privilege concerns, and an important note for whistleblowers who are current employees or representatives of a target taxpayer.

**Questions 10 – 12.** Information about the Alleged Violation – Indicate and describe the alleged violation (information about IRS compliance work areas is available at IRS.gov/whistleblower). Explain why you believe the act described constitutes a violation of the tax laws, and how and when you learned of the alleged violation. Attach all records and supporting documentation (for example, books and records, taxpayer's website address, etc.) to substantiate the claim. If submitting copies of tax forms, clearly indicate "Do Not Process" on each page. If documents or supporting evidence are not in your possession, describe these documents and their location.

**Questions 13 – 14.** These questions are asking for an estimate of the tax owed and the years/periods that the tax applies. Check the box to indicate if the alleged violation(s) is ongoing.

EXHIBIT - 5

**Questions 15 – 29. Information about the Claimant –** If multiple claimants are filing this claim jointly, check the box for Question 15 (each individual claimant needs to complete the questions asking about the claimant's information). If multiple claimants, and manually completing the form, then multiple prints for Section C are required in order to complete the questions for each claimant.

Provide the claimant's name, address, date of birth, SSN or ITIN, telephone number, and email address. Generally, the Whistleblower Office does not correspond through email. Inform the Whistleblower Office of any changes to your contact information to receive time-sensitive correspondence and prevent claim processing delays. Check the box for Question 19 to authorize the Whistleblower Office to send future correspondence to the address you provided on your most recent individual income tax return filing. This will help avoid delays in future communication(s), i.e. award payments, in the event your current address differs from the address provided on your original Form 211 submission. An IRS employee, such as a subject matter expert, may contact you to fully understand the claim submission information. Check the box for Question 22 to indicate if a Form 2848, *Power of Attorney and Declaration of Representative*, is attached to this claim submission. You can find additional information about the whistleblower claim process on Publication 5251, *Whistleblower Claim Process*.

**Question 30.** By law, information must be submitted under penalty of perjury. For joint or multiple claimants, Form 211 must be signed by each claimant. A 'wet ink' signature is not required for the IRS to accept a Form 211. The Whistleblower Office will accept the faxed copies of signatures and photocopies of signatures, including scanned images of a signed paper document. The Whistleblower Office will not accept any electronic signatures on a Form 211 submitted through mail, fax, or email.

---

### Privacy Act and Paperwork Reduction Act Notice

We ask for the information on this form to carry out the internal revenue laws of the United States. Our authority to ask for this information is 26 USC 6109 and 7623. We collect this information for use in determining the correct amount of any award payable to you under 26 USC 7623. We may disclose this information as authorized by 26 USC 6103, including to the subject taxpayer(s) as needed in a tax compliance investigation and to the Department of Justice for civil and criminal litigation. You are not required to apply for an award. However, if you apply for an award you must provide as much of the requested information as possible. Failure to provide information may delay or prevent processing your request for an award; providing false information may subject you to penalties.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and return information are confidential, as required by 26 U.S.C. 6103.

The time needed to complete this form will vary depending on individual circumstances. The estimated average time is 45 minutes. If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can email us at *taxforms@irs.gov (please type "Forms Comment" on the subject line) or write to the Internal Revenue Service, Tax Forms Coordinating Committee, SE: W: CAR: MP: T: T: SP, 1111 Constitution Ave. NW, IR-6406, Washington, DC 20224.

Send the completed Form 211 to the above Ogden address of the Whistleblower Office. Do NOT send the Form 211 to the Tax Forms Coordinating Committee.

EXHIBIT - 5



## CFOL TRANSCRIPT INSTRUCTION REQUEST

**CFOL TRANSCRIPT INSTRUCTION REQUEST**

**Whistleblower Claim: Rocket Mortgage LLC – EIN:** ████4670

**Claimant: :Jehorek: Jason-Gerald, sui juris**

**Authorized Representative / Grantor / Settlor / Creditor Beneficiary**

**Estate: JASON GERALD FAMILY OF JEHOREK ESTATE**

**c/o 11937 Fairlie Place, Raleigh, North Carolina [27613]**

**Without Prejudice [UCC 1-308] – All Rights Reserved.**

---

**TO: Internal Revenue Service – Whistleblower Office**

**RE: Corporate Transcript Verification of Unreported Mortgage-Backed Securities Proceeds and Trust Conversions**

I respectfully request that the IRS retrieve and examine all relevant **Corporate Files Online (CFOL)** transcripts and master file records for the taxpayer entity listed below:

- **Taxpayer Entity: Rocket Mortgage LLC**

- **EIN:** ████4670

- **Years Requested: 2017 through 2025 (inclusive)**

- **Form Types Requested:**

  - IRS Form 1099-A (Acquisition or Abandonment)

  - IRS Form 1099-OID (Original Issue Discount)

  - IRS Form 1099-B (Broker Proceeds)

  - IRS Form 1096 (Summary Transmittals)

  - All associated Forms 1120, Schedule M-3, Schedule L (Balance Sheets)

**Purpose:**

These transcripts are requested to confirm whether Rocket Mortgage LLC properly declared and reported:

1. Income from the monetization or conversion of two promissory notes signed by the source of credit, :Jehorek: Jason-Gerald, dated 2017 and 2020.

**Page 1 of 2**

EXHIBIT - 5



## CFOL TRANSCRIPT INSTRUCTION REQUEST

2. **Receipts derived from mortgage pooling, securitization, servicing premiums, and related earnings.**

3. **Tax reporting compliance, including whether information returns were issued or suppressed.**

Failure to issue 1099-series forms, as well as concealment of conversion gains into REMIC or trust securities, would constitute a violation of public laws including:

- **[26 U.S.C. § 61] – Gross Income from All Sources**

- **[26 U.S.C. § 6045] – Broker Reporting Requirements**

- **[26 U.S.C. § 6041] – Returns Regarding Payments of Income**

This request is made as part of the official evidentiary record submitted in support of the attached IRS Form 211 whistleblower claim, supported by administrative affidavits and original instruments (Exhibits A–N).

*Note: The estate seal/logo includes the "Dunbar" family lineage name for cultural and genealogical recognition. The official IRS estate name remains "JASON GERALD FAMILY OF JEHOREK ESTATE" as reflected in IRS EIN filings.*

**Submitted in Good Faith**
by: *Jehorek Jason-Gerald*
:Jehorek: Jason-Gerald, sui juris
Authorized Representative / Grantor / Settlor / Primary Creditor
For: ©JASON GERALD JEHOREK™
All Rights Reserved. Without Prejudice [UCC 1-308]
Without Recourse to Me.
Date: *6-20-2025*

 **Rocket Mortgage**

Rocket Mortgage
1050 Woodward Ave.
Detroit, MI 48226

May 12, 2025

Jason Jehorek
11937 Fairlie Pl
Raleigh, NC 27613

Re:    Loan no██████8042

Dear Jason Jehorek:

Rocket Mortgage (previously known as Quicken Loans) is in receipt of your recent correspondence. Thank you for giving us the opportunity to address your concerns. In reviewing your correspondence, we are unable to respond to any specific portion as we are unclear what you are trying to accomplish. Our best guess is this is an attempt to have your loan discharged and refunded. As we will explain below, your mortgage contract is valid, and we deny your demand for a refund of funds paid for the origination or repayment of your loan.

As a prudent and responsible mortgage lender, Rocket Mortgage is bound and guided by prevailing underwriting lending guidelines and fair housing laws. In every case, we verify the information needed to qualify our clients for their loan—and your loan application was no different. After gathering the requisite information (including verifying your income, credit, home value, property taxes, and other information), you qualified for a 30-year, fixed-rate conventional mortgage loan. Furthermore, you executed a Uniform Residential Loan Application on November 4, 2017 attesting to the accuracy of the information used to qualify you for the loan. The terms of your loan were communicated to you throughout your loan process and remained consistent from the time you applied until your closing. In addition, as part of your closing documents, you received and signed the Notice of Right to Cancel, which stated you had three business days after closing to review your documents and contact us if you did not agree with the terms of the loan. However, you did not exercise your right to cancel the loan.

For the foregoing reasons, your mortgage contract is valid, and you do not have the right to cancel your loan. Furthermore, we received a payment for the payoff of your loan on December 22, 2020. Since your loan is paid in full Rocket Mortgage is no longer the servicer of your loan and no longer has a vested interest in your property. We have enclosed a copy of your signed Uniform Residential Loan Application, Deed of Trust, Note, Notice of Right to Cancel, Transaction History, and Satisfaction of Security Instrument for your reference.

We hope our communication has addressed any concerns you have. If you have any additional questions or concerns, please contact our Client Relations Team and speak with one of our Advocates. Our Client Relations Team is available to assist you Monday through Friday from 8:30 a.m. to 9:00 p.m. ET, and Saturday from 9:00 a.m. to 4:00 p.m. ET and can be reached at (800) 508-0944 or via email at ServicingHelp@rocketmortgage.com.

Respectfully,

Rocket Mortgage Client Relations

EXHIBIT - 5

*Sent by Rocket Mortgage on May 12th 2025*
*(Look at Note in Red)*

Rocket Mortgage Loan Applicaiton Deceber 22, 2020.pdf    file:///C:/Jason%20Gerald/Trusts%20&%20Legal/Jason%20Jeh...

*Original Mortgage Robic...*

## Uniform Residential Loan Application

**10/27/17**

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

**X** No Signature Required     X

Jason Jehorek

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 3190893042 |
| Amount $ 236,800.00 | Interest Rate 4.250 % | No. of Months 360 | Amortization Type: ☒ Fixed Rate ☐ Other (explain): ☐ GPM ☐ ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state & ZIP)     No. of Units
11937 Fairlie Pl, Raleigh, NC 27613-7842     Wake County     1

Legal Description of Subject Property (attach description if necessary)     Year Built
ACRES: 0.2 / 10251 HARRINGTON GROVE SCL A9-501 TROI / MAP: 773 251     1992

Purpose of Loan: ☐ Purchase ☐ Construction ☐ Other (explain): ☒ Refinance ☐ Construction-Permanent

Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |

Complete this line if this is a refinance loan.

| Year Acquired 2013 | Original Cost $ 201,285.00 | Amount Existing Liens $ 214,295.98 | Purpose of Refinance Cash Out | Describe Improvements ☐ made ☐ to be made   Cost: $ |

Title will be held in what Name(s)     Manner in which Title will be held     Estate will be held in:
Jason Jehorek, Anna Marie Jehorek     JTWIROS     ☒ Fee Simple ☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain)

### III. BORROWER INFORMATION

| Borrower | Co-Borrower |
| Borrower's Name (include Jr. or Sr. if applicable) Jason Jehorek | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| Social Security Number 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 | Home Phone (incl. area code) (919) 270-6828 | DOB (mm/dd/yyyy) 12/09/76 | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
| ☒ Married ☐ Unmarried ☐ Separated     Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married ☐ Unmarried ☐ Separated     Dependents (not listed by Borrower) no. ages |
| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent ___ No. Yrs. 11937 Fairlie Pl Raleigh, NC 27613-7842 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |

### IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
| Name & Address of Employer ☐ Self Employed IBM 3039 E Cornwallis rd Durham, NC 27709 | Yrs. on this job 2.41     Yrs. employed in this line of work/profession 20 | Name & Address of Employer ☐ Self Employed | Yrs. on this job     Yrs. employed in this line of work/profession |
| Position/Title/Type of Business | Business Phone (incl. area code) (800) 426-4968 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to)     Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to)     Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from - to)     Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to)     Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Uniform Residential Loan Application
Fannie Mae/Freddie Mac
4085631177

Fannie Mae Form 1003 Freddie Mac Form 65

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 11,238.40 | $ | $ 11,238.40 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 1,358.00 | $ 1,164.92 |
| Bonuses | | | | Other Financing (P&I) | 135.00 | |
| Commissions | | | | Hazard Insurance | | 56.58 |
| Dividends/Interest | | | | Real Estate Taxes | | 222.86 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 19.00 | 19.00 |
| | | | | Other | | |
| Total | $ 11,238.40 | $ | $ 11,238.40 | Total | $ 1,512.00 | $ 1,463.36 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person as well.    Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by: (Earnest Money Deposit) | $ |
| Credit for Application Deposit | 500.00 |
| List checking and savings accounts below | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | $ |
| Stocks & Bonds (Company name/number & description) | $ |
| Life insurance net cash value   Face amount $ | $ |
| Subtotal Liquid Assets | $ 500.00 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 295,000.00 |
| Vested interest in retirement fund | $ |
| Net worth of business(es) owned (attach financial statement) | $ |
| Automobiles owned (make and year) | $ |
| Other Assets (itemize) | $ |
| **Total Assets a.** | $ 295,500.00 |

Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company   Application Deposit   Revolving   Acct no. 3390893042 | $ Payment/Months   25.00/ 20 | $ 500.00 |
| Name and address of Company   CENLAR   PUD   Acct no. 6047785086 | $ Payment/Months   1,358.00/ 135 | $ 183,616.33* |
| Name and address of Company   COASTAL FEDERAL CREDIT UNION   PUD   Acct no. 9047720070804 | $ Payment/Months   135.00/ 227 | $ 30,680.59* |
| Name and address of Company   COASTAL FEDERAL CRED   Mortgage   Acct no. 9047720070803 | $ Payment/Months   529.00/ 46 | $ 24,105.00 |
| Name and address of Company   NISSAN MOTOR ACCEPTANC   Installment   Acct no. 102435446120801 | $ Payment/Months   390.00/ 62 | $ 11,755.00 |
| Name and address of Company   CHASE CARD   Revolving   Acct no. 414720229402 | $ Payment/Months   25.00/ 90 | $ 2,247.00 |
| Name and address of Company   See Attached   Acct no. | $ Payment/Months | $ |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job-Related Expense (child care, union dues, etc.) | $ | |
| **Total Monthly Payments** | $ | |
| Net Worth (a minus b) ► | $ 39,684.02 | |
| | **Total Liabilities b.** | $ 256,015.98 |

Uniform Residential Loan Application
Freddie Mac/Fannie Mae
VMP ®
Wolters Kluwer Financial Services

Fannie Mae Form 1003 7/05 (rev. 6/09)
Freddie Mac Form 65 7/05 (rev. 6/09)
VMP21N (0903).01
Page 3 of 4

Page 2

## VI. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11937 Fairlie Pl | PUD | $295,000.00 | $214,296.98 | $ | $1,493.00 | $ 19.00 | $ |
| | | | | | | | |
| | | | | | | | |
| **Totals** | | $295,000.00 | $ 214,296.98 | $ | $ 1,493.00 | $ 19.00 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 214,296.98 |
| e. Estimated prepaid items | 3,716.42 |
| f. Estimated closing costs | 2,460.69 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | 888.00 |
| i. Total costs (add items a through h) | 221,382.09 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| Credit for Application Deposit | 500.00 |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 236,800.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 236,800.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -15,917.91 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *(signature)* | 11/06/2017 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, the lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [X] I do not wish to furnish this information | CO-BORROWER | [ ] I do not wish to furnish this information |
|---|---|---|---|
| **Ethnicity:** [ ] Hispanic or Latino  [ ] Not Hispanic or Latino | | **Ethnicity:** [ ] Hispanic or Latino  [ ] Not Hispanic or Latino | |
| **Race:** [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American  [ ] Native Hawaiian or Other Pacific Islander  [ ] White | | **Race:** [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American  [ ] Native Hawaiian or Other Pacific Islander  [ ] White | |
| **Sex:** [ ] Female  [ ] Male | | **Sex:** [ ] Female  [ ] Male | |

**To be Completed by Loan Originator**

This information was provided:
[ ] In a face-to-face interview
[X] In a telephone interview
[ ] By the applicant and submitted by fax or mail
[ ] By the applicant and submitted via e-mail or the internet

| Loan Originator's Signature | Date |
|---|---|
| X *(signature)* | 11/06/2017 |

| Loan Originator's Name (print or type) | Loan Originator Identifier | Loan Originator's Phone Number (including area code) |
|---|---|---|
| Cory E Lorence | NMLS ID 1037452 | (800) 226-6309 ext. 68075  CoryLorence@quickenloans.com |
| Loan Origination Company's Name | Loan Origination Company Identifier | Loan Origination Company's Address |
| Quicken Loans Inc. | NMLS ID 3030 | 1050 Woodward Ave  Detroit, MI 48226-1906 |

Uniform Residential Loan Application
Freddie Mac Form 65  7/05 (Rev. 6/09)
Fannie Mae Form 1003  7/05 (Rev. 6/09)

VMP ®
Wolters Kluwer Financial Services

CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Jason Jehorek<br>Co-Borrower: | Agency Case Number |
| --- | --- | --- |
| | | Lander Case Number<br>3390893042 |

··· **Liabilities** ···

| | | |
| --- | --- | --- |
| CITICARDS CBNA<br>5424181115807<br>Revolving | $ 41.00 / | $ 2,010.00 |
| SYNCB/CARE CREDIT<br>6019182211445228<br>Revolving | $ 34.00 / | $ 1,083.00 |
| TD BANK N.A./ALLY<br>4675370001527061<br>Revolving | $ 35.00 / | $ 899.00 |

We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X _Jason Jehorek_ | Date<br>11/04/2017 | Co-Borrower's Signature:<br>X | Date |
| --- | --- | --- | --- |

Uniform Residential Loan Application
Fannie Mae/Freddie Mac
VMP ®
Wolters Kluwer Financial Services

Fannie Mae Form 1003 7/05 (Rev. 6/09)
Freddie Mac Form 65 7/05 (Rev. 6/09)
VMP21N (0605)
Page 4 of 4

*page 4*

MERS MIN: ████████8930427

# Note

████3042
Jehorek, Jason

November 4, 2017
*[Date]*

Raleigh
*[City]*

NC
*[State]*

11937 Fairlie Pl
Raleigh, NC 27613-7842
*[Property Address]*

## 1. Borrower's Promise to Pay

In return for a loan that I have received, I promise to pay U.S. $ 236,800.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. Interest

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. Payments

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on January 1, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 6577, Carol Stream, IL 60197 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,164.92

## 4. Borrower's Right to Prepay

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

4085631113
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMPGN (1302).01
Page 1 of 3



Page 5

Page 10 of 85

Page 10 of 85

### 5. Loan Charges

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. Borrower's Failure to Pay as Required

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          4.000% of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. Giving of Notices

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. Obligations of Persons Under this Note

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMPSN (1302).01
Page 2 of 3

*Page 6*

**9. Waivers**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*This was not on original Note. Look Like it was Stepped After* [handwritten]

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_Jason J Jeh_ [signature] 11/04/2017 (Seal)       (Seal)
Jason Jehorek    -Borrower        -Borrower

_____ (Seal)  _____ (Seal)
      -Borrower         -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures

Loan origination organization Quicken Loans Inc.
NMLS ID 3030
Loan originator Cory E Lorence
NMLS ID 1437452

*[Sign Original Only]*
Without Recourse
Pay to the Order of

QUICKEN LOANS INC.

By _____
ASHLEY SMITH
CAPTURE MANAGER

*who is she?* [handwritten]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Page 3 of 3

*page 7* [handwritten]

# Notice of Right to Cancel

| Lender | Borrower/Owner | Date |
|---|---|---|
| Quicken Loans Inc.<br>1050 Woodward Ave<br>Detroit, MI 48226-1906 | Anna Marie Jehorek<br><br>11937 Fairlie Pl<br>Raleigh, NC 27613-7842 | November 4, 2017<br><br>**Loan Number**<br>████████3042 |

**Type**
Conventional

**Property Address:** 11937 Fairlie Pl
Raleigh, NC 27613-7842

## Your Right to Cancel.

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) The date of the transaction, which is November 4, 2017;
    or
(2) The date you received your Truth in Lending disclosures;
    or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel. (Please include your loan number and printed name)**
If you decide to cancel this transaction, you may do so by notifying us in writing, at:
Mail: Quicken Loans Inc.., ATTN: Director of Accounting, 1050 Woodward Ave, Detroit, MI 48226-1906
Fax: Quicken Loans Inc.., ATTN: Director of Accounting, (877)380-7112
For questions or concerns, please call Client Relations at (800)863-4332 Option #4.

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail, you must send the notice no later than midnight of November 8, 2017 (or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I Wish to Cancel.**

_____     _____
**Signature**                                                          **Date**

The undersigned each acknowledge receipt of two copies of this *Notice of Right to Cancel* and one copy of the Truth in Lending disclosures.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

**Borrower/Owner**

*Anna Marie Jehorek*    11/04/2017
Anna Marie Jehorek      **Date**                             **Date**

                           **Date**                             **Date**

4085630825
Notice of Right to Cancel
Bankers Systems TM VMP ®
Wolters Kluwer Financial Services © 1992, 2011

q03390893042 0244 361 0101

VMP64 (1512).00
Page 1 of 1

*Page 8*

EXHIBIT - 5,

Rocket Mortgage Loan Applicaiton Deceber 22, 2020.pdf          file:///C:/Jason%20Gerald/Trusts%20&%20Legal/Jason%20Jeh...

BK018276PG02235

WAKE COUNTY, NC
TAMMY L. BRUNNER
REGISTER OF DEEDS
PRESENTED & RECORDED ON
01-06-2021 AT 14:11:21

BOOK: 018276 PAGE: 02235 - 02235

# SATISFACTION OF SECURITY INSTRUMENT

NORTH
CAROLINA
COUNTY OF WAKE
LOAN NO.: 3390893042
PROCESSED BY: FIRST AMERICAN MORTGAGE SOLUTIONS
WHEN RECORDED MAIL TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402

THE UNDERSIGNED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS, is now the secured creditor in the Security Instrument identified as follows:

Type of Security Instrument: DEED OF TRUST
Original Trustor(s): JASON JEHOREK AND ANNA MARIE JEHOREK, HUSBAND AND WIFE
Original Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS
Original Trustee(s): CLINT BONKOWSKI
Said Security Instrument dated NOVEMBER 04, 2017 in the amount of $236,800.00 was recorded on NOVEMBER 08, 2017 in Deed Book 016963 at Page 00051 in the Official Records of the Office of the Register of Deeds in WAKE County, State of NORTH CAROLINA.

This satisfaction terminates the effectiveness of the Security Instrument, and extinguishes the underlying obligation secured by the instrument, and reconveys to the persons entitled thereto.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on DECEMBER 31, 2020.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY

ERIC FERGUSON, VICE PRESIDENT

STATE OF ARIZONA    COUNTY OF MARICOPA

On DECEMBER 31, 2020, before me, B ROBERSON, Notary Public, personally appeared ERIC FERGUSON, VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be and whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person, or entity, who they acted on the behalf of, executed the instrument.

B ROBERSON (COMMISSION EXP. 12/02/2022)
NOTARY PUBLIC



B ROBERSON
Notary Public, State of Arizona
Maricopa County
Commission # 556289
My Commission Expires
December 02, 2022

POD: 20201222
QL8040120LM - LR - NC

Page 1 of 1

MIN: 100039033908930427

MERS PHONE: 1-888-679-6377

*Page 9*

BK016963PG00051

WAKE COUNTY, NC
CHARLES P. GILLIAM
REGISTER OF DEEDS
PRESENTED & RECORDED ON
11-08-2017 AT 11:52:54

BOOK: 016963 PAGE: 00051 - 00071

---

63823095          **Deed of Trust**       ▬▬8042

Return To:Document Management
Quicken Loans Inc. 1050 Woodward Ave     Detroit, MI 48226-1906

Prepared By:Jonathan L Anderson
1050 Woodward Ave    Detroit, MI 48226-1906
(313)373-0000
Loan Originator:

MIN: 100039033908930427

**Definitions**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  November 4, 2017  , together with all Riders to this document.

(B) "Borrower" is Jason Jehorek and Anna Marie Jehorek, husband and wife

Borrower is the trustor under this Security Instrument.

(C) "Lender" is Quicken Loans Inc.

Lender is a         Corporation
organized and existing under the laws of     the State of Michigan
Lender's address is 1050 Woodward Ave, Detroit, MI 48226-1906.

(C-1) The name of the Mortgage Broker is N/A

4085631127

Submitted electronically by "Brady & Kosofsky, PA-Refi"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Wake County Register of Deeds.

*page 10*

EXHIBIT - 5

BK016983PG00052

(D) "Trustee" is Clint Bonkowski

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated November 4, 2017. The Note states that Borrower owes Lender Two Hundred Thirty Six Thousand Eight Hundred and 00/100
                Dollars (U.S. $ 236,800.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2047.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider           ☒ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider        ☒ Other(s) [specify]
                                                          Legal Attached

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3034 1/01
VMP ® Bankers Systems        Page 2 of 17

*Page 11*

BK016963PG00053

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## Transfer of Rights in the Property

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the

County                              of                    Wake
*(Type of Recording Jurisdiction)*              *(Name of Recording Jurisdiction)*

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:          0779314768          which currently has the address of
11937 Fairlie Pl                                                      *(Street)*
          Raleigh                    *(City)*, North Carolina 27613-7842    *(Zip Code)*
("Property Address"):

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS

*page 12*

BK016963PG00054

(as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Uniform Covenants. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 the Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

*page 13*

BK016963PG00055

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

page 14

BK016963PG00056

Funds. Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.　**Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.　**Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

*page 15*

BK016963PG00057

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

*Page 16*

BK016963PG00058

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems ™
Wolters Kluwer Financial Services

page 17

BK016963PG00059

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3034 1/01
Page 9 of 17

*page 18*

EXHIBIT - 5

BK016963PG00060

a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ® Bankers Systems ™
Wolters Kluwer Financial Services

Form 3034 1/01
VMPA6N(NC)(1302).00
Page 12 of 17

*Page 19* (handwritten)

BK016963PG00081

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

*Page 20*

BK016963PG00062

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

NORTH CAROLINA--Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3034 1/01<br>VMP   Bankers Systems™<br>Wolters Kluwer Financial Services     VMP6A(NC)(1101).00<br>Page 12 of 17

*page 21*

BK016963PG00063

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty

*Page 22*

BK016983PG00064

owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Non-Uniform Covenants. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of

*Page 23*

BK016963PG00065

Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of          5.000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. Attorneys' fees must be reasonable.

NORTH CAROLINA Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

*Page 24*

EXHIBIT-5

Rocket Mortgage Loan Applicaiton Deceber 22, 2020.pdf                    file:///C:/Jason%20Gerald/Trusts%20&%20Legal/Jason%20Jeh...

BK016963PG00066

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 11/04/2017 (Seal)
Jason Jehorek                           -Borrower

_____ 11/04/2017 (Seal)
Anna Marie Jehorek                      -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

page 25

BK016863PG00067

**Acknowledgment**
State of NC
County of Wake
I, Melissa Y. Mack , a notary public, do hereby certify that
Jason Jehorek and Anna Marie Jehorek, husband and wife

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and official stamp or seal on November 4, 2017.

_Melissa Y Mack_
Notary Public

My commission expires: 9/18/2018

Loan Origination OrganizationQuicken Loans Inc.
NMLS ID: 3030
Loan OriginatorCory E Lorence
NMLS ID: 1437452

MELISSA Y. MACK
NOTARY PUBLIC
WAKE COUNTY, NC
My Commission Expires 9/18/2018

Page 26

EXHIBIT - 5

BK016963PG00068

### EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 0177230

Land situated in the City of Raleigh in the County of Wake in the State of NC

BEING ALL OF LOT 251, THE GLEN AT HARRINGTON GROVE, SECTION 1, TRACT D-1, SUBDIVISION RECORDED IN MAP BOOK 1989, AT PAGE 1401, WAKE COUNTY REGISTRY.

Commonly known as:   11937 Fairlie PL Raleigh, NC 27613-7842

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR INFORMATIONAL PURPOSES

page 27

BK016863PG00069

MERS MIN: ██████8930427      ██████42

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     **4th**    day of **November, 2017** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
**Quicken Loans Inc.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**11937 Fairlie Pl**
**Raleigh, NC 27613-7842**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in CC & R's as amended from time to time

(the "Declaration"). The Property is a part of a planned unit development known as **HARRINGTON GROVE**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.



**MULTISTATE PUD RIDER**– Single Family – FannieMae/FreddieMac UNIFORM INSTRUMENT
Form 3150 1/01   4085631139
Wolters Kluwer Financial Services      Page 1 of 3      Initials:
VMP®-7R (0811)

*page 28*

BK016963PG00070

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**MULTISTATE PUD RIDER-** Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-7R (0811)       Page 2 of 3    Initials: _____    Form 3150 1/01

*page 29*

BK016963PG00071

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Jason Jehorek_    11/04/2017 (Seal)    _Anna Marie Jehorek_ 11/04/2017 (Seal)
Jason Jehorek      -Borrower      Anna Marie Jehorek      -Borrower

_____ (Seal)      _____ (Seal)
     -Borrower          -Borrower

_____ (Seal)      _____ (Seal)
     -Borrower          -Borrower

_____ (Seal)      _____ (Seal)
     -Borrower          -Borrower

MULTISTATE PUD RIDER- Single Family - FannieMae/FreddieMac UNIFORM INSTRUMENT
VMP ®-7R (0811)      Page 3 of 3      Form 3150 1/01

_page 30_

EXHIBIT - 5

Rocket Mortgage Loan Application Decebar 22, 2020.pdf

file:///C:/Jason%20Gerald/Trusts%20&%20Legal/Jason%20Jeh...

**Date: 5/12/2025**

Jehorek Jason

11937 Fairlie Pl
Raleigh NC 27613

Next Payment Due Date: 1/1/2021
Total Payment Amount: $1,464.16
Current UPB: $0.00
Escrow Balance: $0.00

**Servicing Team**
**Detroit, MI 48226**
**1-800-508-0944**

**ROCKET Mortgage**

Property Address:
11937 Fairlie Pl
Raleigh

Loan Type: Conventional w/o PMI
Interest Rate: .0425000
PIF Date: 12/22/2020

**Transaction History for Loan Number:** 042

Activity from 1/1/1900 to 5/12/2025

| Date | Due Date | Effective Date | Tran Amount | Principal | Interest | Escrow Total | Escrow Tran | Fees | Suspense Total | Suspense Tran | Principal Balance | Tran Code | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/5/2021 | | | -$1,747.54 | $0.00 | $0.00 | $0.00 | -$1,747.54 | $0.00 | $0.00 | $0.00 | $0.00 | 307 | ESCROW REFUND |
| 12/22/2020 | 1/1/2021 | 12/22/2020 | $225,955.12 | $0.00 | $0.00 | $637.73 | $0.00 | $0.00 | $225,955.12 | $225,955.12 | $224,296.86 | 173 | PAYMENT |
| 12/22/2020 | 1/1/2021 | | $0.00 | $224,296.86 | $548.45 | $1747.54 | $1,109.81 | $0.00 | $0.00 | $225,955.12 | $0.00 | 181 | LOAN PAID IN FULL |
| 12/22/2020 | 1/1/2021 | | $245.93 | $0.00 | $245.93 | $1747.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 183 | INTEREST TO INVESTOR - PAID BY QUICKEN LOANS |
| 12/2/2020 | 12/1/2020 | 12/2/2020 | $1,464.16 | $369.23 | $795.69 | $637.73 | $299.24 | $0.00 | $0.00 | $0.00 | $224,296.86 | 172 | PAYMENT |
| 11/4/2020 | 12/1/2020 | 11/4/2020 | $0.00 | $0.00 | $0.00 | $338.49 | $0.00 | $0.07 | $0.00 | -$0.07 | $224,666.09 | 173 | PAYMENT |
| 11/4/2020 | | | -$0.07 | $0.00 | $0.00 | $338.49 | $0.00 | $0.00 | $0.07 | $0.00 | $224,666.09 | 745 | CORPORATE ADJUSTMENT |
| 11/3/2020 | 12/1/2020 | 11/3/2020 | $0.07 | $0.00 | $0.00 | $338.49 | $0.00 | $0.00 | $0.07 | $0.07 | $224,666.09 | 172 | PAYMENT |
| 11/3/2020 | 11/1/2020 | 11/3/2020 | $1,464.16 | $367.92 | $797.00 | $338.49 | $299.24 | $0.00 | $0.00 | $0.00 | $224,666.09 | 172 | PAYMENT |
| 10/28/2020 | 12/1/2020 | | -$2,937.63 | $0.00 | $0.00 | $39.25 | -$2,937.63 | $0.00 | $0.00 | $0.00 | $225,034.01 | 312 | COUNTY TAX DISBURSEMENT |
| 10/2/2020 | 10/1/2020 | 10/2/2020 | $1,464.09 | $366.63 | $798.29 | $2976.88 | $299.24 | -$0.07 | $0.00 | $0.00 | $225,034.01 | 172 | PAYMENT |
| 10/2/2020 | | | $0.07 | $0.00 | $0.00 | $2677.64 | $0.00 | $0.00 | $0.00 | $0.00 | $225,400.64 | 745 | CORPORATE ADJUSTMENT |
| 9/2/2020 | 9/1/2020 | 9/2/2020 | $1,464.16 | $365.33 | $799.59 | $2677.64 | $299.24 | $0.00 | $0.00 | $0.00 | $225,400.64 | 172 | PAYMENT |
| 8/4/2020 | 8/1/2020 | 8/4/2020 | $1,464.16 | $364.04 | $800.88 | $2378.40 | $299.24 | $0.00 | $0.00 | $0.00 | $225,765.97 | 172 | PAYMENT |
| 7/2/2020 | 7/1/2020 | 7/2/2020 | $1,464.16 | $362.76 | $802.16 | $2079.16 | $299.24 | $0.00 | $0.00 | $0.00 | $226,130.01 | 172 | PAYMENT |
| 6/2/2020 | 6/1/2020 | 6/2/2020 | $1,464.16 | $361.48 | $803.44 | $1779.92 | $299.24 | $0.00 | $0.00 | $0.00 | $226,492.77 | 172 | PAYMENT |

Page 1 of 3

EXHIBIT - 5

Rocket Mortgage Loan Application December 22, 2020.pdf

file:///C:/Jason%20Gerald/Trusts%20&%20Legal/Jason%20Jeh...

page 32

| Date | Due Date | Date | Amount | Principal | Interest | Escrow | Escrow | | | Balance | Code | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/4/2020 | 5/1/2020 | 5/4/2020 | $1,464.16 | $360.20 | $804.72 | $1480.68 | $299.24 | $0.00 | $0.00 | $0.00 | $226,854.25 | 172 | PAYMENT |
| 4/30/2020 | 5/1/2020 | 4/30/2020 | $0.00 | $0.00 | $0.00 | $1181.44 | $193.21 | $0.00 | $0.00 | -$193.21 | $227,214.45 | 173 | PAYMENT |
| 4/29/2020 | 5/1/2020 | 4/29/2020 | $193.21 | $0.00 | $0.00 | $988.23 | $0.00 | $0.00 | $193.21 | $193.21 | $227,214.45 | 172 | PAYMENT |
| 4/2/2020 | 4/1/2020 | 4/2/2020 | $1,479.16 | $358.93 | $805.99 | $988.23 | $314.24 | $0.00 | $0.00 | $0.00 | $227,214.45 | 172 | PAYMENT |
| 3/3/2020 | 3/1/2020 | 3/3/2020 | $1,479.16 | $357.66 | $807.26 | $673.99 | $314.24 | $0.00 | $0.00 | $0.00 | $227,573.38 | 172 | PAYMENT |
| 2/24/2020 | 3/1/2020 | | -$614.00 | $0.00 | $0.00 | $359.75 | -$614.00 | $0.00 | $0.00 | $0.00 | $227,931.04 | 351 | HAZARD INS DISBURSEMENT |
| 2/4/2020 | 2/1/2020 | 2/4/2020 | $1,479.16 | $356.40 | $808.52 | $973.75 | $314.24 | $0.00 | $0.00 | $0.00 | $227,931.04 | 172 | PAYMENT |
| 1/3/2020 | 1/1/2020 | 1/3/2020 | $1,479.16 | $355.14 | $809.78 | $659.51 | $314.24 | $0.00 | $0.00 | $0.00 | $228,287.44 | 172 | PAYMENT |
| 12/3/2019 | 12/1/2019 | 12/3/2019 | $1,479.16 | $353.89 | $811.03 | $345.27 | $314.24 | $0.00 | $0.00 | $0.00 | $228,642.58 | 172 | PAYMENT |
| 11/4/2019 | 11/1/2019 | 11/4/2019 | $1,479.16 | $352.64 | $812.28 | $314.24 | $314.24 | $0.00 | $0.00 | $0.00 | $228,996.47 | 172 | PAYMENT |
| 11/4/2019 | 11/1/2019 | | -$283.21 | $0.00 | $0.00 | $31.03 | -$283.21 | $0.00 | $0.00 | $0.00 | $228,996.47 | 168 | REPAY OF ESCROW ADVANCE |
| 10/26/2019 | 12/1/2019 | | -$2,976.88 | $0.00 | $0.00 | -$283.21 | -$2,976.88 | $0.00 | $0.00 | $0.00 | $229,349.11 | 312 | COUNTY TAX DISBURSEMENT |
| 10/26/2019 | 11/1/2019 | | $283.21 | $0.00 | $0.00 | $2976.88 | $283.21 | $0.00 | $0.00 | $0.00 | $229,349.11 | 161 | ESCROW ADVANCE |
| 10/2/2019 | 10/1/2019 | 10/2/2019 | $1,479.16 | $351.40 | $813.52 | $2693.67 | $314.24 | $0.00 | $0.00 | $0.00 | $229,349.11 | 172 | PAYMENT |
| 9/4/2019 | 9/1/2019 | 9/4/2019 | $1,479.16 | $350.16 | $814.76 | $2379.43 | $314.24 | $0.00 | $0.00 | $0.00 | $229,700.51 | 172 | PAYMENT |
| 8/2/2019 | 8/1/2019 | 8/2/2019 | $1,479.16 | $348.92 | $816.00 | $2065.19 | $314.24 | $0.00 | $0.00 | $0.00 | $230,050.67 | 172 | PAYMENT |
| 7/2/2019 | 7/1/2019 | 7/2/2019 | $1,479.16 | $347.69 | $817.23 | $1750.95 | $314.24 | $0.00 | $0.00 | $0.00 | $230,399.59 | 172 | PAYMENT |
| 6/4/2019 | 6/1/2019 | 6/4/2019 | $1,479.16 | $346.46 | $818.46 | $1436.71 | $314.24 | $0.00 | $0.00 | $0.00 | $230,747.28 | 172 | PAYMENT |
| 5/2/2019 | 5/1/2019 | 5/2/2019 | $1,479.16 | $345.24 | $819.68 | $1122.47 | $314.24 | $0.00 | $0.00 | $0.00 | $231,093.74 | 172 | PAYMENT |
| 4/2/2019 | 4/1/2019 | 4/2/2019 | $1,445.53 | $344.02 | $820.90 | $808.23 | $280.61 | $0.00 | $0.00 | $0.00 | $231,438.98 | 172 | PAYMENT |
| 3/4/2019 | 3/1/2019 | 3/4/2019 | $1,445.53 | $342.81 | $822.11 | $527.62 | $280.61 | $0.00 | $0.00 | $0.00 | $231,783.00 | 172 | PAYMENT |
| 2/21/2019 | 3/1/2019 | | -$735.00 | $0.00 | $0.00 | $247.01 | -$735.00 | $0.00 | $0.00 | $0.00 | $232,125.81 | 351 | HAZARD INS DISBURSEMENT |
| 2/4/2019 | 2/1/2019 | 2/4/2019 | $1,445.53 | $341.60 | $823.32 | $982.01 | $280.61 | $0.00 | $0.00 | $0.00 | $232,125.81 | 172 | PAYMENT |
| 1/3/2019 | 1/1/2019 | 1/3/2019 | $1,445.53 | $340.39 | $824.53 | $701.40 | $280.61 | $0.00 | $0.00 | $0.00 | $232,467.41 | 172 | PAYMENT |
| 12/4/2018 | 12/1/2018 | 12/4/2018 | $1,445.53 | $339.19 | $825.73 | $420.79 | $280.61 | $0.00 | $0.00 | $0.00 | $232,807.80 | 172 | PAYMENT |
| 11/2/2018 | 12/1/2018 | | -$2,807.72 | $0.00 | $0.00 | $140.18 | -$2,807.72 | $0.00 | $0.00 | $0.00 | $233,146.99 | 312 | COUNTY TAX DISBURSEMENT |
| 11/2/2018 | 11/1/2018 | 11/2/2018 | $1,445.53 | $337.99 | $826.93 | $2947.90 | $280.61 | $0.00 | $0.00 | $0.00 | $233,146.99 | 172 | PAYMENT |
| 10/2/2018 | 10/1/2018 | 10/2/2018 | $1,445.53 | $336.80 | $828.12 | $2667.29 | $280.61 | $0.00 | $0.00 | $0.00 | $233,484.98 | 172 | PAYMENT |
| 9/4/2018 | 9/1/2018 | 9/4/2018 | $1,445.53 | $335.61 | $829.31 | $2386.68 | $280.61 | $0.00 | $0.00 | $0.00 | $233,821.78 | 172 | PAYMENT |
| 8/2/2018 | 8/1/2018 | 8/2/2018 | $1,445.53 | $334.43 | $830.49 | $2106.07 | $280.61 | $0.00 | $0.00 | $0.00 | $234,157.39 | 172 | PAYMENT |
| 7/3/2018 | 7/1/2018 | 7/3/2018 | $1,445.53 | $333.25 | $831.67 | $1825.46 | $280.61 | $0.00 | $0.00 | $0.00 | $234,491.82 | 172 | PAYMENT |
| 6/4/2018 | 6/1/2018 | 6/4/2018 | $1,445.53 | $332.07 | $832.85 | $1544.85 | $280.61 | $0.00 | $0.00 | $0.00 | $234,825.07 | 172 | PAYMENT |

EXHIBIT - 5

Rocket Mortgage Loan Application Deceber 22, 2020.pdf

| 5/15/2018 | 5/1/2018 | 5/14/2018 | $0.00 | $330.90 | $834.02 | $1264.24 | $280.61 | $0.00 | $0.00 | -$1,445.53 | $235,157.14 | 173 | PAYMENT |
| 5/14/2018 | 5/1/2018 | 5/14/2018 | $1.17 | $0.00 | $0.00 | $983.63 | $0.00 | $0.00 | $1,445.53 | $1.17 | $235,488.04 | 173 | PAYMENT |
| 5/2/2018 | 5/1/2018 | 5/2/2018 | $1,444.36 | $0.00 | $0.00 | $983.63 | $0.00 | $0.00 | $1,444.36 | $1,444.36 | $235,488.04 | 172 | PAYMENT |
| 4/3/2018 | 4/1/2018 | 4/3/2018 | $1,444.36 | $329.73 | $835.19 | $983.63 | $279.44 | $0.00 | $0.00 | $0.00 | $235,488.04 | 172 | PAYMENT |
| 3/2/2018 | 3/1/2018 | 3/2/2018 | $1,444.36 | $328.57 | $836.35 | $704.19 | $279.44 | $0.00 | $0.00 | $0.00 | $235,817.77 | 172 | PAYMENT |
| 2/23/2018 | 3/1/2018 | | -$693.00 | $0.00 | $0.00 | $424.75 | -$693.00 | $0.00 | $0.00 | $0.00 | $236,146.34 | 351 | HAZARD INS DISBURSEMENT |
| 2/2/2018 | 2/1/2018 | 2/2/2018 | $1,444.36 | $327.41 | $837.51 | $1117.75 | $279.44 | $0.00 | $0.00 | $0.00 | $236,146.34 | 172 | PAYMENT |
| 1/2/2018 | 1/1/2018 | 1/2/2018 | $1,444.36 | $326.25 | $838.67 | $838.31 | $279.44 | $0.00 | $0.00 | $0.00 | $236,473.75 | 172 | PAYMENT |
| 11/18/2017 | 11/18/2017 | | $503.28 | $0.00 | $503.28 | $558.87 | $0.00 | $0.00 | $0.00 | $0.00 | $236,800.00 | 170 | PREDISTRIBUTED PAYMENT |
| 11/13/2017 | 1/1/2018 | | $558.87 | $0.00 | $0.00 | $558.87 | $558.87 | $0.00 | $0.00 | $0.00 | $236,800.00 | 170 | PREDISTRIBUTED PAYMENT |
| 11/13/2017 | | | -$236,800.00 | -$236,800.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $236,800.00 | 142 | LOAN SETUP |

file:///C:/Jason%20Gerald/Trusts%20&%20Legal/Jason%20Jason%20Jab...

Case 5:25-cv-00558-D-BM    Document 11-7    Filed 01/27/26    Page 47 of 85

EXHIBIT - 5



## Affidavit and Declaration of Trust Authority

I, :Jehorek: Jason-Gerald, sui juris, a living man, competent to testify, not a U.S. citizen or resident, hereby declare and affirm under penalty of perjury, pursuant to the laws of the united States of America, that the following is true, correct, and complete to the best of my knowledge, belief, and understanding.

## DECLARATION

1. I am the living man commonly known as :Jehorek: Jason-Gerald, who is not the corporate entity styled ©JASON GERALD JEHOREK™, but rather the lawful holder in due course, the Grantor, Settlor, Principal Creditor, and Master Trustee (TTEE) of said estate.

2. I have lawfully created and acknowledged a Durable Power of Attorney, executed in equity, under private contract, and not pursuant to any public statute. This document delegates authority to the fiduciary office of Attorney-in-Fact, in distinct capacity, for the legal estate known as ©JASON GERALD JEHOREK™.

3. I affirm that the aforementioned estate is a private express trust established under private law and administered by private trusteeship, with no adhesion to or under any incorporated statutory system or jurisdiction of the District of Columbia or its franchises.

4. All rights, powers, and authorities claimed and exercised by the undersigned originate by way of birthright, express trust, equitable title, and private contract. All acts taken are performed Without Prejudice [UCC 1-308] and under full reservation of rights.

5. I hereby record and present this affidavit to serve as a declaration of trust authority, and to give proper notice to any agency, court, or public registry that the undersigned does not consent to any presumption of commercial capacity, voluntary servitude, or suretyship for the corporate legal fiction styled in all capital letters.

Page 1 | 2

EXHIBIT - 5



## Affidavit and Declaration of Trust Authority

**FURTHER AFFIANT SAYETH NAUGHT.**

**Affiant:**

Autograph: _Jehorek, Jason-Gerald_

:Jehorek: Jason-Gerald, sui juris

Master Trustee / Authorized Representative / Grantor / Creditor Beneficiary

For: ©JASON GERALD JEHOREK™

All Rights Reserved. Without Prejudice [UCC 1-308]

Note: The estate seal/logo includes the "Dunbar" family lineage name for cultural and genealogical recognition. The official IRS estate name remains "JASONGERALD FAMILY OF JEHOREK ESTATE" as reflected in IRS EIN filings

State of North Carolina )
County of _Wake_ ) ss

On this _20_ day of _June_, 2025, before me, the undersigned Notary Public, personally appeared :Jehorek: Jason-Gerald, known to me or satisfactorily proven to be the living man whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Signature of Notary Public: _Ali R. Jawanshir_
Printed Name of Notary: _Ali R. Jawanshir_
(Seal)

ALI R. JAWANSHIR
Notary Public - North Carolina
Wake County
My Commission Expires Aug 26, 2029

**P a g e  2 | 2**

EXHIBIT - 5



## AFFIDAVIT OF UNDERSTANDING AND DEMAND

### File No: JGJ-12091968-12USC83-AFF
### Created by: Jehorek, Jason-Gerald

**Concerning 12 U.S. Code § 83 – Prohibition on Loaning Capital Stock**

I, :Jehorek: Jason-Gerald., sui juris, a living man, being of lawful age, sound mind, and competent capacity, do hereby affirm and declare the following truthfully, voluntarily, and without prejudice:

---

### I. PURPOSE AND LEGAL BASIS

This affidavit is made to assert the facts and invoke the operation of [12 U.S. Code § 83], which states:

"No national bank shall make any loan or discount on the security of the shares of its own capital stock."

This affidavit is made in conjunction with the Private Security Agreement and the foundational principles of contract law, UCC, and lawful consideration.

---

### II. FACTUAL UNDERSTANDING

1. **A national bank cannot lend its own assets or capital stock.**
   Therefore, any claim by a national bank to have "loaned" its own funds violates the very statutes governing its operations.

2. **All purported "loans" are monetized based on the promissory note signed by the alleged borrower.**
   This note is deposited by the bank as an asset and becomes the basis for issuing corresponding credit.

3. **The bank brings no lawful consideration to the transaction.**
   As the originating energy (via my signature), I am the source of the funds, not the recipient.

**Page 1 of 4**

EXHIBIT - 5



## AFFIDAVIT OF UNDERSTANDING AND DEMAND

4. **The bank is forbidden by law from risking its own capital.**
   Hence, it is not the lender in truth or in law, but merely a processing agent of credit generated by the customer.

## III. COMMERCIAL MAXIMS & CASE LAW SUPPORT

- *First National Bank v. Lanier*, 78 U.S. 369 (1870):

"The capital stock of the bank is a trust fund... it cannot be pledged as security for loans."

- *Modern Money Mechanics* (Federal Reserve of Chicago):

"Banks do not lend money. They create it."

- *Creditors and Their Bonds*:

"The signature is the credit. The borrower is the creditor."

- UCC § 3-303(b):

A promise or order is issued for value if the issuer acquires rights in the instrument for consideration.

## IV. LAWFUL DEMANDS

Accordingly, I demand the following:

1. **Proof of Lawful Consideration** – Show lawful funds the bank risked in the transaction.

2. **Full Accounting** – Provide ledger-level detail of how the note was booked and where the proceeds were deposited.

3. **Creditor Identification** – State under penalty of perjury who funded the transaction: the undersigned, or the bank.

## V. NOTICE AND PRESERVATION OF RIGHTS

Page 2 of 4

EXHIBIT - 5



## AFFIDAVIT OF UNDERSTANDING AND DEMAND

Let it be known that any failure to rebut the facts herein constitutes tacit agreement and admission that no loan was made by the bank, and that I am the lawful creditor of the account.

All rights reserved. Without prejudice. Without recourse to me.

This affidavit stands as unrebutted public record unless contested by verified sworn affidavit within 30 days of publication.

**Footnote – Supplemental Sources for Context Only:**

This affidavit draws support from public law and contract principles. For additional commercial understanding, the following sources are acknowledged:

- *Modern Money Mechanics*, Federal Reserve Bank of Chicago

- *Creditors and Their Bonds*, private commercial publication

- *Behind the Curtain*, by John Hamer
  These references provide insight into credit creation and accounting practices in banking, and are cited for educational and contextual clarity only—not as controlling legal authority.

Note: The estate seal/logo includes the "Dunbar" family lineage name for cultural and genealogical recognition. The official IRS estate name remains "JASONGERALD FAMILY OF JEHOREK ESTATE" as reflected in IRS EIN filings

EXHIBIT - 5



## AFFIDAVIT OF UNDERSTANDING AND DEMAND

by: _Jehorek, Jason-Gerald_

:Jehorek: Jason-Gerald., sui juris

**Grantor / Settlor / Creditor / Authorized Representative**

For: ©JASON GERALD JEHOREK™

All Rights Reserved. Without Prejudice [UCC 1-308]

Date: _6-20-25_

### NOTARY ACKNOWLEDGMENT

State of _North Carolina_

County of _Wake_

On this _20_ day of _June_, 2025, before me, the undersigned Notary Public, personally appeared :Jehorek: Jason-Gerald., known to me or satisfactorily proven to be the living man whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Signature of Notary Public: _Ali R. Jawanshir_

Printed Name of Notary: _Ali R. Jawanshir_

My Commission Expires: _Aug 26, 2029_

[Seal]

ALI R. JAWANSHIR
Notary Public - North Carolina
Wake County
My Commission Expires Aug 26, 2029

Page 4 of 4

EXHIBIT - 5



## Form 2848 and Durable Power of Attorney – Whistleblower Claim Submission

:Jehorek: Jason-Gerald, sui juris
Primary Trustee / Authorized Representative / Grantor / Creditor Beneficiary
c/o 11937 Fairlie Place
Raleigh, North Carolina [27613]
For: JASON GERALD FAMILY OF JEHOREK ESTATE – EIN██████672
Without Prejudice [UCC 1-308] – All Rights Reserved
Date: 6-20-25

Internal Revenue Service
Whistleblower Office – ICE
1973 N Rulon White Blvd.
M/S 4110
Ogden, UT 84404

To Whom It May Concern,

Please find enclosed the following documents in support of a Whistleblower Claim (Form 211) submitted under [26 U.S.C. §7623]:

1. **IRS Form 2848 – Power of Attorney and Declaration of Representative**
   This authorizes limited representation for the purpose of communicating with and accessing records related specifically to the Whistleblower Claim. The acts authorized have been narrowly tailored to allow only those duties necessary to support, evaluate, and process the claim.

2. **Durable Power of Attorney (DPA) – For Record**
   The attached Durable Power of Attorney is provided for jurisdictional and record clarification. It establishes the undersigned's standing as the Grantor, Settlor, and Authorized Representative acting in private capacity, with all rights reserved. It does not conflict with the authority granted under the Form 2848 and should be accepted as part of the administrative record for this matter.

No other representation, delegation, or fiduciary authority is granted beyond the Whistleblower program's administrative scope. This package is tendered in good faith and in the public interest for the accurate processing of the information provided.

Case 5:25-cv-00558-D-BM    Document 11-7    Filed 01/27/26    Page 54 of 85
Page 54 of 85

EXHIBIT - 5



## Form 2848 and Durable Power of Attorney – Whistleblower Claim Submission

Should any further documentation, affidavits, or certifications be required, I am prepared to respond promptly.

Respectfully,

by: *Jehorek Jason–Gerald*

:Jehorek: Jason-Gerald, sui juris
Primary Trustee / Authorized Representative / Grantor / Creditor Beneficiary
For: JASON GERALD FAMILY OF JEHOREK ESTATE – EIN ███████672
All Rights Reserved. Without Prejudice
Without Recourse to me.

*Note: The estate seal/logo includes the "Dunbar" family lineage name for cultural and genealogical recognition. The official IRS estate name remains "JASON GERALD FAMILY OF JEHOREK ESTATE" as reflected in IRS EIN filings.*

Case 5:25-cv-00558-D-BM    Document 11-7    Filed 01/27/26    Page 55 of 85

Page 55 of 85

EXHIBIT - 5

# Form 2848
(Rev. January 2021)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

▶ Go to www.irs.gov/Form2848 for instructions and the latest information.

OMB No. 1545-0150

**For IRS Use Only**

Received by:

Name _____
Telephone _____
Function _____
Date ___ / ___ / ___

## Part I  Power of Attorney

**Caution:** A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.

**1  Taxpayer Information.** Taxpayer must sign and date this form on page 2, line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| **JASON GERALD JEHOREK** | ▓▓▓5193    ▓▓▓193    ▓▓▓672 |
| **11937 FAIRLIE PLACE** | Daytime telephone number: 919-278-8828 · Plan number (if applicable) |
| **RALEIGH NORTH CAROLINA 27613** | |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2  Representative(s) must sign and date this form on page 2, Part II.**

| Name and address | |
|---|---|
| Jehorek Jason-Gerald | CAF No.  0316-58123 |
| c/o 11937 Fairlie PL | PTIN _____ |
| Raleigh NC [27613] | Telephone No.  919-278-8828 |
| | Fax No. _____ |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| Check if to be sent copies of notices and communications ☐ | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

| Name and address | |
|---|---|
| | CAF No. _____ |
| | PTIN _____ |
| | Telephone No. _____ |
| | Fax No. _____ |
| (Note: IRS sends notices and communications to only two representatives.) | Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3  Acts authorized (you are required to complete line 3).** Except for the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| Whistleblower submission involving underreported income, 1099s, corporate filings, and associated tax matters | Forms 1099, 1040, 1041, W-2, 1120, supporting docs | 2016 to 2026 |
| | | |
| | | |

**4  Specific use not recorded on the Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See *Line 4, Specific Use Not Recorded on CAF* in the instructions . . . . . . . . . . . . . . . . . ▶ ☐

**5a  Additional acts authorized.** In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information): ☑ Access my IRS records via an Intermediate Service Provider;

☐ Authorize disclosure to third parties;  ☐ Substitute or add representative(s);  ☐ Sign a return; _____

Access records necessary to support and process Whistleblower Claim (Form 211), including review of IRS determinations, calculatio correspondence relating to alleged violations or underreporting. Authority does not extend to signing returns or receiving payments.

☐ Other acts authorized: _____

For Privacy Act and Paperwork Reduction Act Notice, see the instructions.      Cat. No. 11980J      Form **2848** (Rev. 1-2021)

**b**   **Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.

List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____

**6**   **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this form. If you do not want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7**   **Taxpayer declaration and signature.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify I have the legal authority to execute this form on behalf of the taxpayer.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| *Jehorek Jason-Gerald* | *6-20-25* | Grantor / Settlor / Authorized User / Beneficiary / creditor Beneficiary / Authorized Representative |
|---|---|---|
| Signature | Date | Title (if applicable) |
| Jehorek, Jason-Gerald | **JASON GERALD JEHOREK** | |
| Print name | Print name of taxpayer from line 1 if other than individual | |

---

**Part II**   **Declaration of Representative**

Under penalties of perjury, by my signature below I declare that:

- I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
- I am subject to regulations in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
- I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
- I am one of the following:

  **a**   Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

  **b**   Certified Public Accountant—a holder of an active license to practice as a certified public accountant in the jurisdiction shown below.

  **c**   Enrolled Agent—enrolled as an agent by the IRS per the requirements of Circular 230.

  **d**   Officer—a bona fide officer of the taxpayer organization.

  **e**   Full-Time Employee—a full-time employee of the taxpayer.

  **f**   Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).

  **g**   Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the IRS is limited by section 10.3(d) of Circular 230).

  **h**   Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). *See Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.*

  **k**   Qualifying Student or Law Graduate—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student, or law graduate working in a LITC or STCP. See instructions for Part II for additional information and requirements.

  **r**   Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

Note: For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable) | Bar, license, certification, registration, or enrollment number (if applicable) | Signature | Date |
|---|---|---|---|---|
| *e* | *Private Trust Jurisdiction* | *NA* | *by: Jehorek Jason-Gerald Authorized Representative* | *6-20-25* |
| | | | | |
| | | | | |

Form **2848** (Rev. 1-2021)

EXHIBIT-5



## Durable Power of Attorney

This Durable Power of Attorney is issued under private authority, not pursuant to any public act, and made in equity, under private grant, by the man: :Jehorek: Jason-Gerald, sui juris, hereinafter referred to as the ("Agent"),. This declaration is harmonized in form with common commercial practice but preserves all unalienable rights and jurisdiction. It is not subject to the Uniform Power of Attorney Act as codified in the public statutes of any State.

°JASON GERALD JEHOREK™, 11937 FAIRLIE PLACE, RALEIGH, NORTH CAROLINA 27613, hereinafter referred to as the ("PRINCIPLE"), hereby appoint ("Agent"), 8041 Brier Creek Parkway #1110 Raleigh, North Carolina 27617 to exercise the powers and discretions described below.

The estate styled °JASON GERALD JEHOREK™ is a legal entity and trust estate separate and distinct from the man. ("Agent"), acts as Primary Trustee (TTEE), Grantor, Settlor, and ("PRINCIPLE") Creditor on behalf of said estate. ("Agent"), hereby appoints himself, operating in a distinct fiduciary capacity, as private Agent and attorney-in-fact for the estate. This appointment is made in trust, by private contract, under full reservation of rights, Without Prejudice [UCC 1-308].

If the ("Agent"), is unable to serve for any reason, i appoint Successor Agent, Anna Marie Jehorek of c/o 11937 Fairlie Place, Raleigh, North Carolina R030, as my alternate or Successor Agent, as the case may be to serve with the same powers and discretions.

This Power of Attorney shall not be affected by my subsequent incapacity.

## REVOCATION OF PREVIOUS POWER OF ATTORNEY

i hereby revoke any and all general powers of attorney and special powers of attorney knowingly or unknowingly previously granted to any and all corporations, agencies, military, jails, or government bodies are hereby revoked and no longer authorized to act on behalf of the ("PRINCIPLE"), except by direction of the named ("Agent"), .

## FINANCIAL POWER OF ATTORNEY

It is hereby declared that this Financial Power of Attorney is the only valid power of attorney over ("PRINCIPLE"), by the appointed Attorney-in-Fact, Agent, for the purpose of managing and conducting all financial affairs on behalf of ("PRINCIPLE"). This authority includes, but is not limited to, the power to make decisions regarding banking transactions, mortgage accounts, real estate transactions, investments, tax matters, and any other financial obligations or rights. Specifically, this authority extends to all accounts and transactions with any financial institution, including but not limited to checking accounts, savings accounts, loans, and any other financial products or services offered by such institutions.

My ("Agent"), shall have full power to open, maintain, modify, or close accounts at any financial institution, make deposits and withdrawals, negotiate or endorse checks or other instruments, obtain statements, and perform any other acts necessary to manage my financial affairs with any financial institution. Additionally, my ("Agent"), is expressly authorized to create, issue, sign, and deliver promissory notes, bills of exchange, and other negotiable instruments as the creditor on my behalf, acting in my best interest to establish credit

EXHIBIT - 5



## Durable Power of Attorney

obligations owed to me or to secure my financial interests. This Power of Attorney shall remain in effect until revoked in writing by the ("Agent"), , and the Attorney-in-Fact shall act in the best interest of the ("PRINCIPLE"), in all matters pertaining to this authority.

My ("Agent"), shall have full power and authority to act on my behalf. This power and authority shall authorize my ("Agent"), to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that i may acquire in the future. My ("Agent"),'s powers shall include, but not be limited to, the power to:

1. Open, maintain, or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with any financial institutions.

   a. To deposit returns, overpayments; draft financial instruments, amend returns, settlement of personal household expenses; create and issue invoices, statements, presentments, etc. in trade name and all variations of trade name for the ("PRINCIPLE"), lawful drafting and/or using/tendering statements, notes, checks, sight/site drafts, bonds, negotiable instruments, instruments, promissory notes, bills of exchange, international bills of exchange, coupons; all account-related matters, including those with any financial institution. Specifically, my ("Agent"), is authorized to create, issue, sign, and deliver promissory notes and bills of exchange as the creditor on my behalf, establishing obligations owed to me, securing my financial interests, and managing such instruments in accordance with applicable laws and in my best interest.

   b. To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my ("Agent"), shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve, manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the state of North Carolina and Nebraska, under such terms and conditions, and under such covenants, as my ("Agent"), shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

   c. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the ("PRINCIPLE") could if present and under no disability.

   d. To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills

Initial/Date 6-5-25

V:20250525.5



## Durable Power of Attorney

of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my ("Agent"), . To borrow from time to time such sums of money as my ("Agent"), may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which i might have access.

e. Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

f. Add, delete or change beneficiaries to any financial accounts i own including insurance policies, annuities, retirement accounts, payable on death savings or checking accounts or other investments.

g. Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the united States of America, including U.S. Treasury Securities.

h. Have access to any safe deposit box that i might own, including its contents.

2. Provide for the support and protection of myself, my spouse, or of any minor child i have a duty to support or have established a pattern of prior support, including, without limitation, provision for food, lodging, housing, medical services, recreation and travel.

3. Sell, exchange, buy, invest, or reinvest any assets or property owned by the ("PRINCIPLE"). Such assets or property may include income producing or non-income producing assets and property.

4. Purchase and/or maintain insurance and annuity contracts, including life insurance upon my life or the life of any other appropriate person.

5. Take any and all legal steps necessary to collect any amount or debt owed to the ("PRINCIPLE"), or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.

6. Enter into binding contracts on the ("PRINCIPLE")'s behalf.

7. Exercise all stock rights on the ("PRINCIPLE")'s behalf as the ("PRINCIPLE")'s proxy, including

EXHIBIT - 5



## Durable Power of Attorney

all rights with respect to stocks, bonds, debentures, commodities, options or other investments.

8. Maintain and/or operate any business that the ("PRINCIPLE") may own.

9. Employ professional and business assistance as may be appropriate, including attorneys, accountants, and real estate agents.

10. Sell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of my property (now owned or later acquired) including, but not limited to, real estate and real estate rights (including the right to remove tenants and to recover possession). This includes the right to sell or encumber any homestead that i now own or may own in the future.

11. Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

    a. Prepare, sign and file income and other tax returns with federal, state, local, and other governmental bodies.

    b. Obtain information or documents from any government or its agencies, and represent the ("PRINCIPLE") in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

    c. Prepare applications, provide information, and perform any other act reasonably requested by any government or its agencies in connection with governmental benefits (including medical, military and social security benefits), and to appoint anyone, including my ("Agent"), to act as my "Representative Payee" for the purpose of receiving Social Security benefits.

12. Make gifts from the ("PRINCIPLE")'s assets to members of the ("PRINCIPLE")'s family and to such other persons or charitable organizations with whom i have an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), to file state and federal gift tax returns, and to file a tax election to split gifts with my spouse, if any. No Agent acting under this instrument, except as specifically authorized in this instrument, shall have the power or authority to (a) gift, appoint, assign or designate any of the ("PRINCIPLE")'s assets, interests or rights, directly or indirectly, to such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, (b) exercise any powers of appointment i may hold in favor of such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, or (c) use any of my assets to discharge any of such Agent's legal obligations, including any obligations of support which such Agent may owe to others, *excluding* those whom i am legally obligated to support.

13. To transfer any of the ("PRINCIPLE")'s assets to the trustee of any revocable trust created by the ("PRINCIPLE"), if such trust is in existence at the time of such transfer

Initial/Date __6-5-25__

V:20250525.5

EXHIBIT - 5



## Durable Power of Attorney

14. Subject to other provisions of this document, my ("Agent"), may disclaim any interest, which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate. However, my ("Agent"), may not disclaim assets to which i would be entitled, if the result is that the disclaimed assets pass directly or indirectly to my ("Agent"), or my ("Agent"), 's estate. Provided that they are not the same person, my ("Agent"), may disclaim assets which pass to my Gift ("Agent"), , and my Gift ("Agent"), may disclaim assets which pass to my ("Agent"), .

This Power of Attorney shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner.

Any power or authority granted to my ("Agent"), under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing, (i) my income to be taxable to my ("Agent"), , (ii) the ("PRINCIPLE")'s assets to be subject to a general power of appointment by my ("Agent"), , or (iii) my ("Agent"), to have any incidents of ownership with respect to any life insurance policies that i may own on the life of my ("Agent"), .

My ("Agent"), shall not be liable for any loss that results from a judgment error that was made in good faith. However, my ("Agent"), shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney. A Successor Agent shall not be liable for acts of a prior Agent.

My ("Agent"), shall not be entitled to any compensation, during my lifetime or upon my death, for any services provided as my ("Agent"), . My ("Agent"), shall not be entitled to reimbursement of expenses incurred as a result of carrying out any provision of this Power of Attorney.

My ("Agent"), shall provide an accounting for all funds handled and all acts performed as my ("Agent"), as required under state law or upon the ("PRINCIPLE")'s request or the request of any authorized personal representative, fiduciary or court of record acting on my behalf.

This Power of Attorney shall become effective immediately, and shall not be affected by the ("PRINCIPLE")'s disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Durable Power of Attorney. This Power of Attorney shall continue effective until my death. This Power of Attorney may be revoked by me at any time by providing written notice to my ("Agent"), .

EXHIBIT - 5



## Durable Power of Attorney

### Notice to Person Executing Power of Attorney:

A Power of Attorney is an important legal document. By signing the Power of Attorney, you are authorizing another person to act for you, the ("PRINCIPLE"). Before you sign this Power of Attorney, you should know these important facts:

1. Your ("Agent"), (attorney-in-fact) has no duty to act unless you and your ("Agent"), agree otherwise in writing.

2. This document gives your ("Agent"), the powers to manage, dispose of, sell and convey your real and personal property, and to use your property as security if your ("Agent"), borrows money on your behalf, unless you provide otherwise in this Power of Attorney.

3. Your ("Agent"), will have the right to receive reasonable payment for services provided under this Power of Attorney unless you provide otherwise in this Power of Attorney.

4. The powers you give your ("Agent"), will continue to exist for your entire lifetime, unless you state that the Power of Attorney will last for a shorter period of time or unless you otherwise terminate the Power of Attorney. The powers you give your ("Agent"), in this Power of Attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property, unless you provide otherwise in this Power of Attorney.

5. You can change or correct the terms of this Power of Attorney only by executing a new Power of Attorney, or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this Power of Attorney at any time, so long as you are competent.

6. This Power of Attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. All witnesses must be mentally competent and they must (1) witness the ("PRINCIPLE")'s signing of the Power of Attorney or (2) the ("PRINCIPLE")'s signing or acknowledgment of his signature. A Power of Attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

7. You should read this Power of Attorney carefully. When effective, this Power of Attorney will give your ("Agent"), the right to deal with property that you now have or might acquire in the future. The Power of Attorney is important to you. If you do not understand the Power of Attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

Initial/Date —— 1-5-23

Page 6 of 10

V:20250525.5

EXHIBIT - 5



## Durable Power of Attorney

## Notice to Person Accepting the Appointment as Attorney-in-Fact:

By acting or agreeing to act as the ("Agent"), (attorney-in-fact) under this Power of Attorney, you assume the fiduciary and other legal responsibilities of an Agent. These responsibilities include:

1. The legal duty to act solely in the interest of the ("PRINCIPLE"); act loyally, with care, competence, and diligence; and avoid conflicts of interest.

2. The legal duty to keep a record of all transactions made on behalf of the ("PRINCIPLE"), including the responsibility to produce receipts, ledgers and other records of all deposits, disbursements or other transactions involving the ("PRINCIPLE")'s assets or indebtedness.

3. To cooperate with the ("PRINCIPLE")'s ("Agent"), for health care decisions, should the ("PRINCIPLE") appoint such an Agent, in making decisions in accordance with the ("PRINCIPLE")'s desires or in the best interest of the ("PRINCIPLE") if the ("PRINCIPLE")'s wishes are not known.

4. The legal duty to preserve the ("PRINCIPLE")'s estate plan, if one exists, and the ("PRINCIPLE")'s desires for such plan to be preserved.

5. The legal duty to keep the ("PRINCIPLE")'s property separate and distinct from any other property owned or controlled by you.

6. The legal duty to terminate actions as ("Agent"), (Attorney-in-Fact) under this Power of Attorney upon the occurrence of any of the following:

   a. ("PRINCIPLE")'s death;

   b. Revocation of the Power of Attorney of ("PRINCIPLE");

   c. The arrival of any date stated in the Power of Attorney, which states the termination of the Power of Attorney, if any; or

   d. No additional action is required under the Power of Attorney.

7. If you are the spouse of the ("PRINCIPLE"), the Power of Attorney terminates upon legal separation or dissolution of the marriage.

8. You may be held responsible and liable for any intentional actions which violate or abuse your authority under this Power of Attorney as provided by the state and federal laws governing this Power of Attorney.

Initial/Date

EXHIBIT - 5



## Durable Power of Attorney

9. You have the right to seek legal advice if you do not understand your duties as ("Agent"), or any provisions in the Power of Attorney.

You may not transfer the ("PRINCIPLE")'s property to yourself without full and adequate consideration or accept a gift of the ("PRINCIPLE")'s property unless this Power of Attorney specifically authorizes you to transfer property to yourself or accept a gift of the ("PRINCIPLE")'s property. If you transfer the ("PRINCIPLE")'s property to yourself without specific authorization in the Power of Attorney, you may be prosecuted for fraud and/or embezzlement. If the ("PRINCIPLE") is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse. In addition to criminal prosecution, you may be sued in civil court.

# Definitions
### See "EXBIT A" for Private Glossary

Initial/Date **1-5-25**          Page 8 of 10          V:20250525.5

EXHIBIT - 5



### Durable Power of Attorney

## AUTHORIZED REPRESENTATIVE'S CERTIFICATION AND ACCEPTANCE OF AUTHORITY

i, :Jehorek, Jason-Gerald, certify that the attached is a true copy of a power of attorney naming the undersigned as Authorized Representative for ⁰JASON GERALD JEHOREK™. i certify that to the best of my knowledge the ("PRINCIPLE") had the capacity to execute the power of attorney, is alive, and has not revoked the power of attorney; that my powers as Authorized Representative have not been altered or terminated; and that the power of attorney remains in full force and effect.

i accept appointment as Authorized Representative under this power of attorney.

This certification and acceptance is made under penalty of perjury.

Signature: _____

⁰JASON GERALD JEHOREK™, as ("PRINCIPLE")

Date: **6-4-25**

Autograph: _Jehorek Jason-Gerald_
:Jehorek: Jason-Gerald, sui juris
Primary Trustee / Authorized Representative /
Grantor / Creditor Beneficiary / ("Agent")
For: ⁰JASON GERALD JEHOREK™
All Rights Reserved. Without Prejudice
Without Recourse to me.

Autograph: _Anna Marie Jehorek_
Anna Marie Jehorek, Successor Agent

Initial/Date

EXHIBIT - 6



## Durable Power of Attorney

## NOTARY

County __Nash__ )
)ss
State of North Carolina )

On this __5th__ day of __June__, 20__25__, before me, the undersigned Notary Public, personally appeared :Jehorek: Jason-Gerald., known to me or satisfactorily proven to be the man whose name is subscribed to the within instrument, and acknowledged that he executed the same in his authorized capacity.

This document is acknowledged for the record only, without granting jurisdiction to any statutory entity. The man appearing is sui juris, not acting as surety, debtor, or U.S. citizen, and signs under full reservation of rights, Without Prejudice [UCC 1-308].

In witness whereof, I hereunto set my hand and official seal.

Signature of Notary Public: _Brian H. Tomlinson_

Brian H Tomlinson
NOTARY PUBLIC
Nash County, NC
My Commission Expires September 06, 2028

(seal)

Initial/Date __6-5-25__          Page 10 of 10          V:20250525.5

EXHIBIT - 5



## PRIVATE SECURITY AGREEMENT WITH GRANTOR'S LIEN NON-NEGOTIABLE

### Document #: JGJ-12091968-PSA
### Created by: Jehorek, Jason-Gerald

This Security Agreement is made and entered into this **20**ᵗʰ day of **June**, 2025 by and between ©JASON GERALD JEHOREK™, hereinafter "DEBTOR," [an artificial corporate entity/person created by the UNITED STATES], and :Jehorek: Jason-Gerald., sui juris, hereinafter "Secured Party."

**Jurisdiction and Venue:** Venue lies without the UNITED STATES, within the private domain and under private trust law, supported by the Uniform Commercial Code [UCC 1-103, UCC 1-308], international contract law, and the Law Merchant.

**Declaration of Status:** :Jehorek: Jason-Gerald., a living, sentient man on the land, not a "person," "individual," or "human being" as defined in statutory law, does not consent to any legal presumption of incorporation, commercial capacity, or joinder to the legal fiction named herein as DEBTOR. Standing is retained in private international common law and under the laws of creation, not statute.

**PUBLIC LAWFUL NOTICE:** This private contract is filed into public record for the sole purpose of giving notice. The filing does not place this agreement under statutory jurisdiction, nor does it constitute consent to any public law venue. Jurisdiction remains exclusively private and contractual.

This Security Agreement stands as unrebutted public record unless contested by verified sworn affidavit within thirty (30) days of publication or filing. All parties and public agents are granted constructive notice upon access or receipt.

### RECITALS
**WHEREAS,** the DEBTOR acknowledges insolvency and necessity, and grants a security interest to the Secured Party over all described collateral; and

**WHEREAS,** the Secured Party is the source of substance and consideration for all DEBTOR transactions, providing use of name, credit, signature, and body in commerce; and

Case 5:25-cv-00558-D-BM     Document 11-7     Filed 01/27/26     Page 68 of 85
Page 68 of 85

Page 68 of 85

EXHIBIT - 5



## PRIVATE SECURITY AGREEMENT WITH GRANTOR'S LIEN NON-NEGOTIABLE

**WHEREAS**, this private agreement is not dischargeable in bankruptcy, not negotiable, and irrevocable without mutual consent;

**NOW THEREFORE, the Parties agree:**

1. **SECURITY INTEREST:** DEBTOR grants Secured Party a security interest in all property described in Schedule A and any other property presently or hereafter acquired, tangible or intangible, to secure any and all obligations and liabilities of the DEBTOR.

2. **DEBTOR acknowledges and agrees:**
   - All rights, titles, and interests in described collateral are lawfully vested in the Secured Party.
   - The DEBTOR is an Ens legis, a transmitting utility and conduit created by operation of law and trust registration.
   - All DEBTOR assets, accounts, and interests are considered surety property securing all obligations owed to the Secured Party.

3. **COLLATERAL includes but is not limited to:**
   - All equitable interests, beneficial claims, administrative control, and constructive trustee relationships held by the DEBTOR or for the benefit of the Secured Party in any domestic or foreign trust, estate (including JASON GERALD FAMILY OF JEHOREK ESTATE), private banking relationship, or fiduciary structure—including but not limited to those held under EINs, trust certificates, DBAs, or unincorporated associations lawfully organized and recorded by the Secured Party;
   - All real, personal, intellectual, and corporeal property;
   - All income, assets, receivables, trust interests, biological data, and rights to travel, work, and contract;
   - All filings, accounts, certificates, registrations, and properties described in any Schedule A;
   - All rights to privacy, bodily autonomy, domicile, freedom of speech, religion, assembly, self-defense, and creation;
   - All IRS Individual Master File records, Treasury Direct accounts, Form 56 declarations, and associated fiduciary relationships.

EXHIBIT - 5



**PRIVATE SECURITY AGREEMENT WITH GRANTOR'S LIEN NON-NEGOTIABLE**

4. **DEFAULT:** Events of default include failure to pay or perform any obligations, breach of any warranty, loss or damage to collateral, insolvency proceedings, foreclosure, or garnishment.

5. **BANKING DISCLOSURE:** In accord with [12 U.S. Code § 83], no national bank shall make any loan or discount on the security of the shares of its own capital stock. Therefore, any obligation or transaction entered into by DEBTOR presumed to be a "loan" was instead funded through the credit and energy of the Secured Party, who is the true source of consideration. All such transactions are deemed securities and constructive trusts, and are enforceable as part of this Security Agreement.

6. **REMEDIES:**
   o Secured Party shall have all remedies available under [UCC 9-609; UCC 9-615] and other commercial law remedies including self-help and non-judicial processes.
   o Secured Party may accelerate all amounts due, liquidate collateral, and perfect claims in any venue deemed proper.

7. **NOTICE AND RECORD:**
   o This Agreement serves as lawful public notice and record of claim. DEBTOR agrees to notify all past and future creditors and claimants of this Agreement.
   o Any unauthorized use of DEBTOR name or collateral without express written consent of the Secured Party is prohibited and constitutes a commercial tort.

8. **INDEMNIFICATION:**
   o DEBTOR indemnifies the Secured Party from all public claims, debts, judgments, and legal costs arising from or related to the use or obligation of the DEBTOR name or assets.

9. **FIDELITY AND INDEMNITY BONDS:**
   o A Fidelity Bond in the sum of $100,000,000,000.00 and an Indemnity Bond in the sum of $500,000,000,000.00 secure the performance and obligations under this Agreement.

10. **NOTICE OF LIEN:**
   • An International Commercial Lien in the amount of $10,000,000,000.00 is hereby asserted and attached to all described property of the DEBTOR.

11. **GOVERNING LAW:**

**Page 3 of 4**

EXHIBIT - 5



## PRIVATE SECURITY AGREEMENT WITH GRANTOR'S LIEN NON-NEGOTIABLE

- The law of the agreement between the parties governs, supported by [UCC], [Public Law 73-10], [HJR-192], and private contract law without adhesion to statutory jurisdiction.

12. AMENDMENT:

- Secured Party may amend this Agreement by additional Schedule A filings. All amendments must be in writing and signed by both Parties.

SIGNATURES:

by: _Jehorek Jason-Gerald_ :Jehorek: Jason-Gerald., sui juris Secured Party / Creditor / Grantor / Settlor / Authorized Representative For: ©JASON GERALD JEHOREK™ All Rights Reserved. Without Prejudice [UCC 1-308] -- Without Recourse

by: _____ ©JASON GERALD JEHOREK™ Debtor All Rights Reserved. Without Prejudice [UCC 1-308]

NOTARY State of North Carolina ) County of _Wake_ )

On this _20_ day of _June_ 2025, the undersigned Notary affirms that the above parties personally appeared, provided identification, and acknowledged the same in good faith. This record constitutes an authentic and lawful private agreement.

Notary Signature: _Ali R. Jawanshir_ Printed Name: _Ali R. Jawanshir_

_Notary Public_ Seal:

ALI R. JAWANSHIR
Notary Public - North Carolina
Wake County
My Commission Expires Aug 26, 2029

Page 4 of 4

EXHIBIT - S



# Package 1 – Private Administrative Settlement & Contract

**Date Mailed:** May 1, 2025
**Contents:**

- Main Cover Letter: Affidavit of Contract Offer and Private Settlement Terms
- Private Administrative Settlement Offer – 1 page
- Private Settlement Self Executing and Hold Harmless Contract - 7 pages + copy
- Notice of Fiduciary Appointment and Responsibility - 3 pages
- Notice of Administrative Offer and Demand for Disclosure
- Private Settlement Offer – Payment Amount: $362,061.55

**Exhibits:**

- Exhibit A - Violations, Liabilities, and Damages
- Exhibit B - Ledger of Damages
- Exhibit C - Private Administrative Fee Schedule
- Exhibit D - Applicable Laws & Cost

**Affidavits**

- Affidavit of Authority and Notice of Power of Attorney-in-Fact
- Affidavit of Life
- Affidavit of Ownership
- Affidavit of Trademark
- IRS Form 56-F Notice Concerning Fiduciary Relationship
- OMB Beneficial Ownership Disclosure Notice (FinCEN)

**Attachments:**

- Copyright Certificate
- North Carolina & Minnesota Assumed Name Certificate
- IRS Forms 1099-A, 1099-B and 1099-OID Forms Filed

**Final Document:**

- Durable Power of Attorney
- Notice of Intent - Fee Schedule
- Certificate of Service (Signed)

# End of Package 1

EXHIBIT - 5



## Package 2 – Notice of Non-Performance and Opportunity to Cure

**Date Mailed: May 23, 2025**
**Contents:**

- Final Enforcement Notice To CFO - Criminal Liability And Demand
- Notice Of Claim, Interest, And Demand For Reconveyance
- Updated Invoice #:1010 – Claim Remains: $965,244.48 (double for non-cure)
- Constructive Trust And Equitable Interest Declaration
- Notice Of Quiet Title Action Pending Final Opportunity To Cure
- Updated: Certificate of Service for Package 1 and 2

**Exhibits:**

- Exhibit A - Affidavit Of Status And Ownership For General Warranty Deed
- Exhibit B - Recorded General Warranty Deed
- Exhibit C - Securitization Evidence & Mers Transfer History
- Exhibit D - Affidavit Of Post-Discharge Fraud And Declaration Of No Further Obligation

## End of Package 2

EXHIBIT - 5



# Package 3 – Final Notice of Non-Response, Default, and Affidavit of Dishonor/Cure

**Date Mailed: June 5, 2025**

**Contents:**

- **Final Notice Of Non-Response, Default, And Affidavit Of Dishonorcure**
  - o **Background And Previous Notices**
  - o **Notice Of Constructive Trust Enforcement Over Securitized Instrument Proceeds**
  - o **Enforcement Remedies And Timeline**
- **Invoice #1011 – Claim: $1,930,488.96 (double for non-cure)**

**Exhibits:**

- **Exhibit A – AFFIDAVIT CERTIFICATE OF SERVICE**
- **Exhibit B – Updated Invoice #1011 $1,930,488.96 (copy)**
- **Exhibit C – Notice Of Non-Response, Contractual Default, And Final Administrative Demand**
  - o **Vanin Krishna –Chief Executive Officer – Package 1, 2, 3, 4**
  - o **Jay Bray – President & CEO – Package 1, 2, 3, 4**
  - o **Bill Emerson - President, Rocket Companies – Package 1, 2, 3, 4**
  - o **Jeff Morganroth - Chief Legal Officer – Package 1, 2, 3, 4**
  - o **Moe Bazzi - Servicing Escalation Specialist – Package 1, 2, 3, 4**
- **Exhibit D: Communication with Moe Bazzi for Pool #, CUSIP, Date Sold to Fannie Mae.**
- **Exhibit E: Constructive Trust Declaration**
- **Exhibit F: LEGAL SUPPORT: Restatement (Third) of Property: Mortgages § 6.4**
- **Exhibit G: Verification Request - Signatory Identity of Eric Ferguson and Ashley Smith (They signed the mortgage agreement but can't find them at Rocket Mortgage or Quicken Loans)**

# End of Package 3

EXHIBIT - 5



# Package 4 – Notice of False Credit Reporting and Administrative Fee Enforcement

**Date Mailed: June 9, 2025**

**Contents:**

- Notice Of False Credit Reporting & Administrative Fee Enforcement
  - Varun Krishna, Chief Executive Officer
  - Jay Bray, President & CEO
  - Bill Emerson, President
  - Jeff Morganroth, Chief Legal Officer
  - Brian Brown, Chief Financial Officer
  - Eric Ferguson, Vice President (Signed Promissory Note: (may be fake name?)can't find them or if they ever worked at Quicken Loans or Rocket Mortgage?)
  - Ashley Smith, Capture Manager (Capture Manager who stamped Promissory Note with Authorized Representative (may be fake name?)can't find them or if they ever worked at Quicken Loans or Rocket Mortgage?)
  - Moe Bazzi, Servicing Escalation Specialist
- *1* New invoice to Varun Krishna - Invoice #1013 – Claim: $17,500.00
- *2* New invoice to Jay Bray - Invoice #1014 – Claim: $17,500.00
- *3* New invoice to Bill Emerson - Invoice #1015 – Claim: $17,500.00
- *4* New invoice to Jeff Morganroth - Invoice #1012 – Claim: $17,500.00
- *5* New invoice to Brian Brown - Invoice #1016 – Claim: $17,500.00
- *6* New invoice to Moe Bazzi - Invoice #1017 – Claim: $17,500.00

*Total $105,000.00*

**Exhibits:**

- Exhibits H-1 – Copies of Threatening Emails and Credit Notices
- Exhibits H-2 – Rocket Mortgage's May 12, 2025 Letter Admitting Loan Paid
- Exhibits H-3 – Invoice Detailing Emotional Distress, False Reporting, Enforcement

# End of Package 4

EXHIBIT - 5



# Package 1

## Contract and Private Administrative Settlement and received by Rocket Mortgage on May 5th, 2025

Certified Mail # 9589 0710 5270 1899 514163



EXHIBIT - 5



# Package 2

## Notice of Non-Payment, Invoice, and Securitization Evidence and received by Rocket Mortgage on May 23rd, 2025

### Certified Mail #: 9589 0710 52701899 5142 31

**Tracking Number:**
**9589071052701899514231**

Copy    Add to Informed Delivery

**Latest Update**

Your item was delivered to an individual at the address at 6:48 am on May 23, 2025 in DETROIT, MI 48226.

**Get More Out of USPS Tracking:**
USPS Tracking Plus®

**Delivered**
Delivered, Left with Individual
DETROIT, MI 48226
May 23, 2025, 6:48 am

See All Tracking History

What Do USPS Tracking Statuses Mean?

EXHIBIT - 5



# Package 3

**Final Enforcement Notice, Constructive Trust Declaration, and Affidavit of Dishonor and sent on June 5th 2025.**

Certified Mail #: 9589 0710 5270 1899 5143 23 sent June 5th 2025

EXHIBIT - 5



# Package 4

## Notice of False Credit Reporting and Adm Free Enforcement

| Name | Date Sent | Certified Mail | Date Received | Items |
|---|---|---|---|---|
| Moe Bazzi | 11-Jun-25 | 9589 0710 5270 1899 5143 78 | 16-Jun-25 | Package 1, 2, 3, 4 |
| Varun Krishna | 5-Jun-25 | 9589 0710 5270 1899 5143 30 | 9-Jun-25 | Package 1, 2, 3, 4 |
| Brian Brown | 5-Jun-25 | 9589 0710 5270 1899 5143 23 | 9-Jun-25 | Package 4 |
| Jeff Morganroth | 5-Jun-25 | 9589 0710 5270 1899 5142 62 | 9-Jun-25 | Package 1, 2, 3, 4 |
| Bill Emerson | 5-Jun-25 | 9589 0710 5270 1899 5142 55 | 9-Jun-25 | Package 1, 2, 3, 4 |
| Jay Bray | 5-Jun-25 | 9589 0710 5270 1899 5142 48 | 9-Jun-25 | Package 1, 2, 3, 4 |

They all received Package 1, 2, 3 and 4 as of May 9th 2025

CERTIFIED MAIL

9589 0710 5270 1899 5144 08
9589 0710 5270 1899 5144 08

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

Internal Revenue Service

Whistellower Office — ICE

1933 N. Rulon White Blvd. M/S 4110

Ogdon UT 84404

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:   Service

Internal Revenue
Whistle blower office — ICE
1973 N Rulon White Blvd M/S4110
Ogden UT 84404

9590 9402 8789 4005 5669 30

2. Article Number (Transfer from service label)
9589 0710 5270 1899 5144 08

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

## lle with Care / Fragile



MOISTURE RESISTANT



USA ONLY

Recycle if Clean & Dry

Store Drop-off

PLASTIC

EXHIBIT - 5



## CERTIFIED MAIL DECLARATION

**To: Internal Revenue Service, Whistleblower Office**
Whistleblower Office – ICE
1973 N. Rulon White Blvd., M/S 4110
Ogden, UT 84404

**From:**
:Jehorek: Jason-Gerald, sui juris
Authorized Representative / Grantor / Settlor / Creditor Beneficiary
c/o 11937 Fairlie Place
Raleigh, North Carolina [27613]
Without Prejudice [UCC 1-308] – All Rights Reserved

---

**RE: Supporting Evidence of Certified Mailing for IRS Whistleblower Submission (Form 211)**

**DATE: June 23, 2025**

I, :Jehorek: Jason-Gerald, sui juris, hereby declare under full commercial and private liability that the following evidence of presentment and certified mailing has been executed and documented in good faith, as part of my lawful Whistleblower Submission Package to the IRS under Form 211.

**1. Notarized Administrative Package Deliveries** Packages 1, 2, 3, and 4 were all:

- Printed and signed under penalty of perjury;
- Lawfully notarized (affidavits and declarations within each);
- Mailed via **USPS Certified Mail with Green Card Return Receipt** for verification;
- Directed individually to Rocket Mortgage LLC and the following named officers:
    - o Varan Krishna, CEO
    - o Jay Bray, President
    - o Bill Emerson, Executive
    - o Jeff Morganroth, CLO

Page 1 of 5

EXHIBIT - 5



## CERTIFIED MAIL DECLARATION

- o   Brian Brown, CFO

- o   Moe Bazzi, Servicing Escalation Specialist

**2. Certified Mail Receipts (Tracking Proof)** Copies of all eight (8) USPS certified receipts and corresponding tracking labels are included in this submission as Exhibits (green card confirmations pending USPS return and will be supplemented).

Each receipt clearly indicates:

- Date of mailing (June 19, 2025);
- City of origin (Raleigh, NC);
- Name and address of recipient (1050 Woodward Ave., Detroit, MI);
- Cost of service and tracking number;
- Postal cancellation stamp as official government witness to mailing.

**3. Declaration of Due Presentment** Each administrative notice is tied to the affidavit and exhibits in the Form 211 Whistleblower Claim and was presented in full compliance with the requirements of:

- [Title 26 U.S.C. § 7623]
- [26 CFR § 301.7623-1]
- [Title 39 U.S. Code § 3001 et seq.]
- [Uniform Commercial Code 1-202, 3-505, and 9-607]

No rebuttal has been received to date from Rocket Mortgage or its officers.

This declaration serves as sworn confirmation of mailing and lawful notice, to be relied upon for enforcement and acceptance of this Whistleblower package.

EXHIBIT - 5



## CERTIFIED MAIL DECLARATION

Executed this 23rd day of June 2025.

by: *Jehorek Jason-Gerald*

:Jehorek: Jason-Gerald, sui juris
Authorized Representative / Grantor / Creditor Beneficiary
For: ©JASON GERALD JEHOREK™
All Rights Reserved. Without Prejudice [UCC 1-308]
Without Recourse.

*Note: The estate seal/logo includes the "Dunbar" family lineage name for cultural and genealogical recognition. The official IRS estate name remains "JASON GERALD FAMILY OF JEHOREK ESTATE" as reflected in IRS EIN filings.*

## CERTIFIED MAIL DECLARATION

### Certified Mail Receits



EXHIBIT - 5

Page 5 of 5



CERTIFIED MAIL DECLARATION